# United States District Court

**DISTRICT OF CONNECTICUT**

NORMAN C. BLOOM,
    Plaintiff

v

                                                    CASE NUMBER: 3:02CV907(PCD)

MICHAEL A. DOUGLAS
    Defendant and Third Party Plaintiff

v

NORMAN C. BLOOM, NORMAN R. BLOOM
REVOCABLE TRUST, NORMAN R. BLOOM
FAMILY SPRAY TRUST and NORMAN R.        APRIL 29, 2004
BLOOM IRREVOCABLE INSURANCE
TRUST
    **Third Party Defendants**

## DEFENDANT/THIRD PARTY PLAINTIFF MICHAEL DOUGLAS' AMENDED RULE 56(A)(2) STATEMENT

Pursuant to this Court's order dated April 21, 2004, defendant/third-party plaintiff files this Amended 56(A)(2) statement.

I.     **Responses to Plaintiff/Third Party Defendants' Rule 56(A)(1) Statement**

With respect to the contents of Plaintiff/Third Party Defendants' Rule 56(a)(1) statement, Defendant/Third Party Plaintiff Michael Douglas avers as follows:

    1.     Admitted.

    2.     Admitted.

    3.     Admitted.

4. Admitted.

5. Denied. (Def. Ex. A, ¶¶ 6-18)

6. Defendant/third party plaintiff admits that the parties entered into an agreement entitled "Agreement" on June 19, 1995. To the extent that "to that end" refers to the giving of "legal advice" or the practice of law in Connecticut, the allegation is denied. (Def. Ex. A, ¶¶ 16-18).

7. Denied. The Agreement specifically provides that "'Douglas' role shall be that of consultant and not attorney in these proceedings." (Def. Ex. B, Sec. 4)

8. It is admitted that, under the Agreement, defendant/third party plaintiff agreed to review previously generated documents, including wills, codicils, trust documents, correspondence, probate papers, tax documents, etc . . . . It is denied that the Agreement included any language to the effect of "and to advise plaintiff Norman C. Bloom with respect to his rights vis-à-vis the aforementioned documents." (Def. Ex. B, Sec. 3)

9. It is admitted that the Agreement states: "Review all action s of the executors, trustees, and others related to the estate." It is denied that the agreement states "provide legal advice to the plaintiff Norman C. Bloom with respect to the actions of . . . ." (Def. Ex. B, Sec. 3)

10. It is admitted that the Agreement states "Helping in planning strategy both in relation to the executor, trustees and their attorneys so as to best protect the client's interest." It is denied that the agreement states "provide to plaintiff Norman C. Bloom legal advice as to . . . ." (Def. Ex. B, Sec. 3)

11. It is admitted that certain, though not all, billings contained the words "Legal Services Rendered" or "Legal Expenses." It is denied that these were intended as binding descriptions of the actual services provided. (Def. Ex. A, ¶¶ 18-20)

12. It is admitted that Douglas attended certain legal proceedings in Connecticut, at which he sat in the audience. At all times, pursuant to Douglas' insistence, Bloom's Connecticut attorneys were present to represent his legal interests. (Def. Ex. A, ¶¶ 20, 23-24, 28-29 and Def. Ex. F, p. 101, lines 12-24)

13. Denied. (Def. Ex. A, ¶¶ 12, 13, 18, 20, 21, 24, 27, 28 and Def. Ex. E, p. 10, lines 11-24; p. 11, lines 1-6; p. 14, lines 11-14; p. 30 lines 20-24 and Def. Ex. F, p. 14, lines 15-24, p. 77, lines 6-10)

14. Denied. (Def. Ex. A, ¶¶ 23, 24 and Def. Ex F, p. 101, lines 1-24)

15. Denied. (Def. Ex. A, ¶¶ 27, 34)

16. Admitted only as to business advice.

17. Denied. Douglas gave business advice. Legal matters and all final say on legal matters were the responsibility of Cohen and Wolfe, P.C. and Reynolds Gordon. (Def. Ex. A, ¶¶ 23, 24, 27, 28, 29, 32, 34)

18. Denied. (Def. Ex. A, ¶¶ 12, 13, 18, 20, 21, 24, 27, 28 and Def. Ex. E, p. 10, lines 11-24; p. 11, lines 1-6; p. 14, lines 11-14; p. 30, lines 20-24 and Def. Ex. F, p. 14, lines 15-24 and p. 77, lines 6-10)

19. Defendant/third party plaintiff Michael Douglas elects not to respond to Paragraph 19 at this stage as it is not a comprehensible sentence and refers only generally to large

exhibits, without specifying upon what portions of those exhibits it is based.  (Pl. Ex. K)

20. Denied.  Defendant's Exhibit L appears to be a timesheet and does not include any "legal memoranda" to evaluate this claim.

21. Denied.  (<u>See</u>, entirety of Def. Ex. A)

22. Denied.  (See above answers in response to this legal conclusion).

**II.   Disputed issues of material fact:**

The following are issues of material fact in dispute:

1. Douglas, although an attorney, earns his living primarily as a businessman and business advisor.  (Def. Ex. A, ¶ 3)

2. Other than the transaction upon which this litigation is based, Douglas has never done business in Connecticut.  (Def. Ex. A, ¶ 5)

3. Norman C. Bloom approached Douglas in June of 1995 and requested his assistance in resolving a dispute related to his father's estate.  (Def. Ex. A, ¶¶ 6-9)

4. Douglas informed Norman C. Bloom at that meeting, and at subsequent meetings that he was not licensed to practice law in Connecticut.  (Def. Ex. A, ¶ 15 and Def. Ex. F, p. 77, lines 6-10)

5. At all relevant times Norman C. Bloom knew that Douglas was not licensed to practice law in Connecticut.  (Def. Ex. A, ¶ 15 and Def. Ex. F, p. 77, lines 6-10)

6. At the time Norman C. Bloom approached Douglas, he relied on the advice of Attorney Devinney for Connecticut legal issues.  (Def. Ex. A, ¶ 20)

7. Norman C. Bloom continued to rely upon attorney Devinney for legal advice until he retained new Connecticut counsel, Cohen and Wolf, P.C. (Def. Ex. A, ¶¶ 20, 21)

8. After that time, Norman C. Bloom relied on Cohen and Wolf, P.C. for all issues implicating Connecticut law. (Def. Ex. A, ¶¶ 21-24; Def. Ex. F, p. 78, lines 3-5; p. 101, lines 1-24; and p. 106, lines 1-16)

9. It was understood between the parties that Douglas would act as "consultant" and not "attorney" and that he would advise primarily on the business and economic aspects of the case. (Def. Ex. A, ¶¶ 14, 15, 18, 20 and Def. Ex. F, p. 14, lines 15-24; p. 77, lines 1-10)

10. That the services Norman C. provided related to the economic and business aspects of the case, leaving all issues of Connecticut law to Norman C. Bloom's Connecticut counsel. (Def. Ex. A, ¶¶ 14, 15, 18, 20 and Def. Ex. E, p. 14, lines 3-14; p. 15, lines 19-24; p. 16, lines 1-24; p. 17, lines 1-5; p. 30, lines 3-24 and Def. Ex. F, p. 14, lines 15-24; p. 77, lines 1-10)

11. That Douglas was one of several "consultants" involved, including Joseph Tessoriere who served as consultant to Robert Bloom and his attorneys. (Def. Ex. A, ¶ 24)

12. That Norman C. Bloom retained attorney Reynolds Gordon during these proceedings, and was still represented by attorney Gordon after Cohen and Wolf terminated their representations agreement. (Def. Ex. A, ¶ 27)

13. That Norman C. Bloom initially refused to pay the fees of Cohen and Wolf, forcing that firm to file suit. (Def. Ex. A, ¶ 33 and Def. Ex. F, p. 110, lines 18-23)

14. That following the Divisive Reorganization Agreement, Norman C. Bloom and his new Attorney Frederick Lovejoy, continued to request and accept Douglas' services. (Def. Ex. A, ¶¶ 34-36)

15. That Douglas performed over four thousand hours of work for Norman C. Bloom over a seven year period, for which only a fraction of the fees have been paid. (Def. Ex. A, ¶ 37)

16. That Norman C. Bloom's refusal to pay is made in bad faith, and for the purpose of avoiding payment for compensable services fairly rendered.

THE DEFENDANT/THIRD PARTY PLAINTIFF
MICHAEL A. DOUGLAS


BY_____
  Joshua D. Lanning (ct24529)
  JACOBS, GRUDBERG, BELT & DOW, P.C.
  350 Orange Street
  P.O. Box 606
  New Haven, CT  06503
  (203) 772-3100 - Phone
  (203) 772-1691 – Fax
  jlanning@jacobslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant/Third Party Plaintiff Michael Douglas' Rule 56(A)(2) Statement was mailed first-class, postage prepaid, this 29th day of April, 2004, to:

Frederick Lovejoy, Esq.
P. O. Box 56
Easton, CT  06612

                                                Joshua D. Lanning