UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Norman C. BLOOM,         : | |
|     Plaintiff,         : | |
|     : | |
| v.         : | Case No. 3:02cv907 (PCD) |
|     : | |
| Michael A. DOUGLAS,         : | |
|     Defendant,         : | |
| ------------------------------------------ | |
| Michael A. DOUGLAS,         : | |
|     Third-Party Plaintiff,         : | |
|     : | |
| v.         : | |
|     : | |
| Norman C. BLOOM,  NORMAN R.         : | |
|     BLOOM REVOCABLE TRUST,         : | |
|     NORMAN R. BLOOM FAMILY         : | |
|     SPRAY TRUST, AND NORMAN         : | |
|     R. BLOOM IRREVOCABLE         : | |
|     INSURANCE TRUST,         : | |
|     Third-Party Defendants.         : | |

## RULING ON PLAINTIFF / THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff/Third-Party Defendant[1] moves for summary judgment. For the reasons stated below, his motion is **denied**.

**I.    Background[2]**

Plaintiff and Defendant met in 1995, when they were neighbors in East Norwalk, Connecticut. Defendant is licensed to practice law in the state of New York, and has never

---

[1]   For the purposes of this ruling, references to "Plaintiff" include Plaintiff and Third-Party Defendant, and references to "Defendant" include Defendant and Third-Party Plaintiff.

[2]   The facts are taken from the parties' Local Rule 56(a) statements, and are undisputed unless otherwise stated.

1

been licensed to practice law in Connecticut. Defendant denies Plaintiff's allegations that Defendant provided him legal advice and acted as his lawyer from June 1995 to March 2002. The parties dispute whether Defendant proffered his services to Plaintiff, or if Plaintiff sought out the services of Defendant.

Plaintiff's father died on October 22, 1989. In June 1995, probate proceeding was going on in the District of Norwalk Connecticut. On June 19, 1995 the parties entered into the "Agreement" in which Defendant agreed to the following:

> (3)   It is the intention and desire of [Plaintiff] that it would be in his best interest to have his own legal consultant whose duties would be the following:
> a)   to review all documents since the inception, i.e., wills, codicils, trust documents, correspondence, probate papers, tax documents, etc.
> b)   Review all actions of the executors, trustees, and others related to the estate.
> c)   Help in asserting the true value of and extent of the assets of the estate.
> d)   Helping in planning strategy both in relation to the executor, trustees and their attorneys so that as to best protect the client's interest.

[Doc. 53, Ex. A]. The Agreement further states that it was "understood that [Defendant's] role shall be that of 'Consultant' not [attorney] in this proceeding" [Doc. 53, Ex. A].

Defendant contends that at no time did he draft legal documents or appear in a legal proceeding on Plaintiff's behalf. Defendant denies Plaintiff's allegation that the Agreement's purpose was for Defendant to provide legal advice to Plaintiff. Defendant denies Plaintiff's allegations that between June 19, 1995 to March 1996 Plaintiff relied solely on Defendant for his legal advice. Defendant asserts that in that time period, Plaintiff relied on Attorney Richard Devinney for all legal advice and representation.

In April 1996, Plaintiff retained the services of Cohen and Wolf, P.C. to represent his interests as a beneficiary of the trusts that held the assets of his father's estate. In

2

January 1997 a "Second Amendment to Agreement" was reached between Plaintiff and Defendant wherein "[Plaintiff] would retain separate attorneys in Connecticut to represent his interests, instead of depending on the attorneys for the Trustee i.e. Westport Bank & Trust," and wherein Defendant agreed to "play a more active role, i.e. accompanying [Plaintiff] at legal proceedings and meetings and actively join the new attorneys Cohn & Wolf in the decision making process" [Doc. 53, Ex. B]. Defendant worked with Plaintiff's Connecticut counsel in helping to plan strategy and reviewing documents prepared by them. Defendant attended all or most proceedings in which Plaintiff's Connecticut counsel appeared and viewed these proceedings from the gallery.

Between November 1997 and February 2000, Defendant sent Plaintiff invoices entitled "Statement for Legal Service Rendered" on which the heading identifies Defendant as Michael A. Douglas, Attorney at Law [Doc. 53 Ex. C]. Defendant denies Plaintiff's allegation that these were intended as binding descriptions of the actual services provided. Defendant also denies Plaintiff's allegation that September 17, 2001 to and including March 2002, Plaintiff again relied solely on Defendant for legal advice. Defendant contends that in December 2000, Plaintiff retained Attorney Ren Gordon to supplement Cohen and Wolf, P.C., and that Gordon still represented Plaintiff when Defendant's services were terminated in April 2002. Defendant further contends that Plaintiff retained Attorney Frederick Lovejoy in July 2001 to represent him in an action against Cohen and Wolf and in regard to outstanding issues concerning his father's estate. Plaintiff has paid some portion of the fees claimed by Defendant.

## II. Standard of Review

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct.2505, 91 L. Ed. 2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d. Cir. 2002) (quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether a genuine issue had been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir. 1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

**III.    Discussion**

Plaintiff alleges that because Defendant engaged in the unauthorized practice of law in Connecticut, the contract for services entered into by both parties is void and Defendant is not entitled to compensation. Defendant first denies that the services rendered constitute the practice of law and contends that the depositions and Defendant's affidavit establish material issues of fact precluding summary judgment. Second, Defendant argues that even if his actions constituted the practice of law, he is entitled to compensation because he (1) informed Plaintiff from the outset that he was not admitted to the bar in Connecticut and (2) Plaintiff had the benefit of counsel that was admitted to practice law in Connecticut during the agreement period. Third, Defendant claims that any action by him that may be found to be the practice of law was conducted in New York and not Connecticut. Finally, Defendant asserts that even if some of his conduct could be construed as the unauthorized practice of law, he would still be entitled to recover for services that were not the practice of law. Ultimately at issue is whether Defendant, an out-of-state attorney who performed certain services for Plaintiff, engaged in the unauthorized practice of law.

    **A.    Preliminary Determinations Regarding Defendant's Affidavit and Plaintiff's Estoppel Argument**

Plaintiff asserts in his Reply Memorandum that the Court should disregard Defendant's affidavit provided in support of the opposition to summary judgment and that Defendant should be estopped from claiming that he did not engage in the unauthorized practice of law [Doc. 82]. As noted in the Ruling on Defendant's Motion to File Sur-Reply [Doc. 84], a reply brief should only respond to issues and arguments raised in the opposition brief. *See* D. CONN. L. CIV. R. 7(d) (A reply brief "must be strictly confined to a

discussion of matters raised by the responsive brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."). To the extent that the arguments raised in the reply brief are responsive to Defendant's Opposition Memorandum [Doc. 68], they can be addressed by the court.

Plaintiff asserts that Defendant's affidavit should be disregarded because it contradicts prior evidence. Pl. Reply Mem. at 5-7. If a party's affidavit contradicts previous sworn statements made by a party who has been examined on deposition, the court shall disregard the conflicting affidavit. *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 577 (2d Cir. 1969). Plaintiff contends that the contract drafted by Defendant in which he agrees to act as a "legal consultant" [Doc. 53, Ex. A] and the invoices for "legal services" [Doc. 53, Ex. C] contradict Defendant's affidavit in which he asserts that he did not engage in unauthorized practice of law. However, Defendant's affidavit is not contradicting sworn statements made in a deposition and is therefore not prior testimony as contemplated in *Perma Research*. The title of the invoice and the text of the Agreement in which Defendant agrees to provide "legal consulting" services are not conclusory testimony contradicted by Defendant's subsequent affidavit.

Although Plaintiff argues that the Agreement drafted by Defendant contradicts his subsequent affidavit, the Agreement itself is ambiguous in distinguishing between acting as an attorney and acting as a consultant. The contracting parties identified two separate roles but did not clearly define how the two roles are different. The Agreement also provides that Defendant will review documents, but does not stipulate if the review is legal or business related. Even if the Agreement did stipulate the purpose of reviewing, the

stipulation would provide evidence only of the parties' intentions and not their actual conduct subsequent to the Agreement.  An affidavit that asserts one interpretation of ambiguous contract language cannot be disregarded based on Plaintiff's conclusory interpretations of the same ambiguous contract.  Therefore, there is no basis to disregard Defendant's affidavit.

     Plaintiff also claims that Defendant is estopped from arguing that he did not provide legal services to Plaintiff.  Pl. Reply Mem. at 7-8.  Estoppel concerns the misleading conduct of one party to the detriment of the other.  *W. v. W.*, 256 Conn. 657, 661, 779 A.2d 716 (2001).  The two essential elements to an estoppel claim are 1) a party does or says something intended to induce another to believe in and act on the existence of certain facts; 2) in reliance on this contention, the induced party changes his position or acts to his injury when he otherwise may not have done so.  *Id*.

     Plaintiff argues that the Agreement and the invoices that Defendant tendered indicate that Defendant purported to provide legal services and to presently claim otherwise would indicate an intent to mislead Plaintiff.  The Agreement specifically states that, "It is understood that 'Douglas' role shall be that of "Consultant" not [attorney] in these proceedings" [Doc 53. Ex. A].  This clause creates a material issue of fact of whether Defendant intended to act Plaintiff's attorney in the proceedings, or simply intended to act as a business consultant.  Plaintiff has not established that Defendant intended to induce

7

Plaintiff to act and therefore, Defendant is not estopped from arguing that he did not provide legal services to Plaintiff.[3]

## B. Unauthorized Practice of Law

Regulating the right to practice is a traditional state function. *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 58 L. Ed. 2d 717. Connecticut General Statute §51-88(a) prohibits the practice of law in Connecticut by a person not admitted to practice under CONN. GEN. STAT. § 51-80.[4] *See Grievance Comm. of the Bar of Fairfield County v. Dacey*, 154 Conn. 129, 140, 222 A.2d 339 (1966).

The law is "well settled that no one is entitled to recover compensation for services as an attorney at law unless he has been duly admitted to practice before the court, or within the jurisdiction in which the services were rendered, and is an attorney in good standing." *Taft v. Amsel*, 23 Conn. Sup. 225, 180 A.2d 756 (1962). "Generally, even though duly admitted in another state, an attorney may not recover compensation for legal services unless he has been duly admitted to practice in the jurisdiction where the services were rendered." *Perlah v. S.E.I. Corp.,* 29 Conn. App. 43, 47, 612 A.2d 806 (1992).

---

[3] Since Plaintiff has failed to establish the first element of an estoppel claim, it is not necessary to address the injury component.

[4] Section §51-88(a) states: "A person who has not been admitted as an attorney under the provisions of section 51-80 shall not: (1) Practice law or appear as an attorney-at-law for another, in any court of record in this state, (2) make it a business to practice law, or appear as an attorney-at-law for another in any such court, (3) make it a business to solicit employment for an attorney-at-law, (4) hold himself out to the public as being entitled to practice law, (5) assume to be an attorney-at-law, (6) assume, use or advertise the title of lawyer, attorney and counselor-at-law, attorney-at-law, counselor-at-law, attorney, counselor, attorney and counselor, or an equivalent term, in such manner as to convey the impression that he is a legal practitioner or law, or (7) advertise that he, either alone or with others, owns, conducts or maintains a law office, or office or place of business of any kind for the practice of law. CONN. GEN. STAT. §51-88(a).

Determining whether a person has engaged in the unauthorized practice of law requires consideration of the facts of each case. *See Grievance Comm. of the Bar of New Haven County v. Payne*, 128 Conn. 325, 329, 22 A.2d 623 (1941).

Neither the Connecticut statutes nor the courts have clearly defined the "practice of law," although the courts have provided some general guidance. "The question for determination is whether [defendant], performed acts, in or out of court, commonly understood to be the practice of law." *State Bar Assoc. v. Connecticut Bank & Trust Co.*, 145 Conn. 222, 234, 140 A.2d 863 (1958). "The practice of law consists in no small part of work performed outside of any court and having no immediate relation to the proceedings in court. It embraces the giving of legal advice on a large variety of subjects and the preparation of legal instruments covering an extensive field." *Id.* at 235; *see also Monroe v. Horwitch*, 820 F. Supp. 682, 686 (D. Conn. 1993) (finding that the "preparation of legal documents" is construed broadly). The Court draws no distinction between the work of a lawyer which includes appearance in court and that work which involves advice and drafting of documents. *Id.* at 235. Some actions have been determined to constitute the practice of law *per se*. *See e.g. Statewide Griev. Comm. v. Zadora*, 62 Conn. App. 828, 829-830, 772 A.2d 681 (2001) (finding the drafting and preparation of legal documents as well as advertising as an attorney-at-law to be the practice of law); *Conn. Bank and Trust Co.,* 145 Conn. at 235 (determining the appearing and representing clients in court proceedings to be the practice of law).

An underlying purpose of the unauthorized practice of law statute is to protect the public from unqualified persons offering legal advice. The prohibition on unauthorized

practice is meant to ensure that Plaintiff is protected from "the potentially severe economic and emotional consequences which may flow from the erroneous advice given by persons untrained in the law." *Monroe*, 820 F. Supp. at 687 n.6. In *Connecticut Bank and Trust*, the court noted that

> the choice of a criterion as to what constitutes the practice of law must be made form the standpoint of public protection, not from that of private advantage for either banks or lawyers. The practice of law is restricted to natural persons who have been licensed upon the basis of established character and competence as a protection to the public against lack of knowledge, skill, integrity, and fidelity.

*State Bar Assoc. v. Conn. Bank and Trust*, 20 Conn. Sup. 248, 250, 131 A.2d 636 (1957). The prohibition of unauthorized practice of law guarantees that the public is advised by advocates of "ability, learning, and sound character and to protect the public from incompetent and dishonest practitioners." *Rosenthal v. State Bar Examining Comm.*, 116 Conn. 409, 415 (1933). "It is of importance to the welfare of the public that these manifold customary functions [practice of law] be performed by persons possessed of adequate learning and skill and of sound moral character, acting at all times under the heavy trust obligation to clients which rests upon all attorneys." *Conn. Bank and Trust Co.*, 145 Conn. at 235. In the present case, Defendant is an attorney licensed in the State of New York, therefore the public policy concerns about a layperson not trained at all in the practice of law are not implicated.

      An additional purpose of the prohibition is to ensure that attorneys practicing in Connecticut are subject to the disciplinary mechanisms of the Connecticut Bar. *Flynt*, 439 U.S. at 442. This regulation provides an additional layer of protection to the public, ensuring the ability to trust in an attorney's knowledge and advice concerning Connecticut

law. Because Defendant has not been duly admitted in Connecticut, his actions are not subject to review by the Connecticut Bar. Plaintiff's Connecticut counsel has claimed responsibility for decision making and has entered appearances before Connecticut courts [Doc. 68 Ex. E]. Although Defendant is not subjected to the admission procedures or disciplinary mechanisms of the state of Connecticut, to the extent Plaintiff retained local counsel who were closely involved in the case and advised him on Connecticut law, the public policy concerns, regarding a client being represented by no one under the purview of the Connecticut Bar, are mitigated significantly.

### C.   Analysis of Defendant's Conduct

A careful and thorough fact-specific inquiry is required when determining whether Defendant's actions constitute the unauthorized practice of law. *See Robertson v. Town of Stonington*, 253 Conn. 255, 261, 750 A.2d 460 (2000). Plaintiff has not alleged that Defendant engaged in any conduct which has been previously determined to constitute the practice of law such as advertising in Connecticut, preparing documents, or appearing in a Connecticut court on behalf of Plaintiff. Preparation of documents has generally meant drafting and revision of documents. *See e.g., Perlah,* 29 Conn. App. at 48; *Conn. Bank and Trust Co.,* 145 Conn. at 234. Plaintiff alleges that Defendant "reviewed documents," but even when construing "preparing documents" broadly, reviewing documents does not necessarily, as a matter of law, fall within the meaning of that term. If Defendant was reviewing documents for the purpose of giving legal advice on matters of Connecticut law, then he would have engaged in the unauthorized practice of law. However, the parties dispute whether Defendant was giving legal advice on Connecticut law while he was

11

reviewing documents related to the division of the estate or giving business advice related to the valuation of the estate.

Plaintiff alleges that Defendant acted as Plaintiff's attorney by accompanying Plaintiff to court proceedings [Doc. 49, ¶ 12]. In *Conn. Bank and Trust Co.*, the defendant, acting in a fiduciary capacity, had its employees, who were not attorneys admitted to practice in Connecticut, enter appearances and represent clients interests in probate courts. *Conn. Bank and Trust Co.*, 145 Conn. at 227. In that case, the court declared that the appearances, as a matter of law, constituted the unauthorized practice of law. *Id.*, at 236. Defendant raises an issue of fact as to whether he was acting as Plaintiff's attorney at court proceedings. Attorney Zeisler, who acted as Connecticut counsel for Plaintiff stated that for at least one court proceeding, Defendant attended as a member of the audience and was not at counsel's table [Doc. 68, Ex. E, pg. 13]. The mere fact of Defendant attending a court proceeding which is generally open to the public does not lead to the conclusion that he was acting as Plaintiff's attorney at that proceeding as a matter of law. *See Grievance Comm. of the Bar of Fairfield County*, 128 Conn. at 329 (determining unauthorized practice of law requires a fact specific inquiry).

There is also a factual dispute about whether Defendant held himself out to be an attorney in offering services to Plaintiff. Advertising alone is sufficient to constitute the unauthorized practice of law if the advertisement is for activity that amounts to legal services. *Zadora*, 62 Conn. App. at 833. Plaintiff alleges that Defendant approached him and "convinced [Plaintiff] that he could provide valuable legal advice to him so that he could obtain his fair share of his father's estate" [Doc. 49, ¶ 5]. In his affidavit, Defendant

alleges that it was Plaintiff that first approached him regarding the probate proceedings and solicited advice from Defendant [Doc. 68, Ex. A, ¶ 7]. Defendant contends that he informed Plaintiff that he was not admitted to practice law in Connecticut and thus could only advise on business issues [Doc. 68, Ex. A, ¶¶ 6-18]. However, Defendant's disclaimer of being an attorney or providing legal advice does not absolve him of liability if he actually engaged in any activity found to constitute the unauthorized practice of law. *Zadora*, 62 Conn. App. at 833.[5]

Because Defendant's actions do not clearly fall within those previously determined to be the "practice of law", a specific factual examination of all actions for which Defendant billed Plaintiff is required. Plaintiff has relied on several pieces of evidence in asserting that Defendant's actions constituted the practice of law.[6] Much of Plaintiff's argument relates not to Defendant's actions, but instead focuses on the labels of those actions as found in the written documents.[7] While the given title of Defendant's activities may provide insight into whether those acts constitute the practice of law, they cannot, as a matter of law, settle the issue on a motion for summary judgment. Although the law is clear in prohibiting compensation for the unauthorized practice of law, it remains unclear

---

[5] In *Zadora* the defendants created a company that drafted and sold legal documents relating to the dissolution of marriages, leases, real estate sales and commercial transactions. Notably, the plaintiff in *Zadora* did not have Connecticut counsel, but relied exclusively on the documents provided by the defendants. *See Zadora,* 682 Conn. App. at 829-830.

[6] Evidence presented includes the Agreements reached by the parties, invoices created by Defendant, the deposition testimony of another attorney involved in the matter, Defendant's time records, and various memoranda created by Defendant while working for Plaintiff. [Doc. 53]

[7] For example, the title of the invoice ("Statement of Legal Service Rendered") and Defendant's identification as "Attorney at Law". [Doc. 53, ex.C].

13

as to whether Defendant's *actions* fall within the prohibition, and if so which specific actions were the practice of law and which were not.

Plaintiff has provided some evidence from which a reasonable fact-finder could conclude that some of Defendant's conduct may constitute the unauthorized practice of law, but Defendant has raised material issues of fact as to whether his actions were those commonly understood to be the practice of law. In his affidavit, Defendant asserts that he acted as a consultant primarily on issues related to the identification, location, and valuation of estate assets [Doc. 68, Ex. A, ¶ 18]. Neither party cites to a case that addresses the precise factual situation as found here. Cases in which Connecticut courts have found an out-of-state attorney engaged in the unauthorized practice of law are distinguishable from the facts of the present case. In *Perlah*, the out-of state attorney maintained an office only in Connecticut and performed all of the work in Connecticut, and there is no indication that local counsel was involved. *Perlah*, 29 Conn. App. at 44. The court engaged in little analysis before concluding that "§ 51-88 prohibited the plaintiff from receiving compensation for legal services performed before being admitted to practice in Connecticut." *Id.* at 48. These cases do not involve an out-of-state attorney who associates with in-state counsel.

Plaintiff's Connecticut counsel has testified on deposition that Connecticut counsel handled all issues of Connecticut law and understood itself to be Plaintiff's attorney and Defendant to be a business consultant.[8] Other similar situations in which courts have

---

[8] Attorney Zeisler testified that "I never saw [Defendant] appear in court, prepare a pleading, give a paper to his client to sign or comment on Connecticut law in any way. In fact, he would always defer to me or Mr. DiMarco if we ever got to a legal issue and ask us what

decided whether a party engaged in the unauthorized practice of law may provide some guidance.  For example, in *Monroe*, the Court found that a paralegal who was not properly supervised engaged in the unauthorized practice of law by preparing papers for parties representing themselves in uncontested divorces.  *Monroe*, 820 F. Supp. at 684.  The court noted that

> a lawyer may delegate functions to a paralegal so long as the lawyer supervises the delegated work and retains responsibility for the work.  Oversight and accountability guarantee, so far as practicable, that the requirements and regulations imposed on lawyers will also insure the quality of work of supervised paralegals.  Prohibiting unsupervised paralegals from work with legal consequences is rationally related to public protection.

*Monroe*, 820 F. Supp. at 687 (internal quotations and citations omitted).  A factual issue remains as to whether Plaintiff's Connecticut counsel supervised and oversaw Defendant's work, assuming ultimate accountability for all decisions implicating Connecticut law.

Defendant's actions may have included those that are commonly undertaken by attorneys but a factual issue remains as to whether his actions are those that can only be described as the practice of law.  Defendant's conduct does not become the practice of law just because it is commonly performed by attorneys.  *See In Re Darlene C*, 247 Conn. 1, 15, 717 A.2d 1242, (1998) (Borden J. concurring) (finding that social workers preparing and filing petitions in the juvenile division of superior court were not engaging in the unauthorized practice of law); *Conn. Bank and Trust Co.,* 145 Conn. at 236, 140 A.2d 863 (1958) (finding banks that disseminated general information concerning the application, scope and effect of various laws and reviewed wills and trust agreements did not engage in

---

we thought" [Doc. 68, ex. E, pg. 30].

the unauthorized practice of law).  If some of Defendant's actions are deemed to constitute the unauthorized practice of law, the factual issue of how much of Defendant's billed time is not compensable and how many compensable hours were billed for services that did not constitute the practice of law remains unresolved. The court cannot make a blanket determination that all actions, as a matter of law, did or did not constitute the unauthorized practice of law, but instead must undertake a factually specific inquiry of all Defendant's actions in the four-thousand hours that he billed Plaintiff for services.

**IV.     Conclusion**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment, [Doc. No. 47] is **denied**.

SO ORDERED

Dated at New Haven, Connecticut, August  14 , 2004


                                                    /s/
                                            Peter C. Dorsey
                                     United States District Judge