United States District Court
DISTRICT OF   CONNECTICUT

NORMAN C. BLOOM,
    Plaintiff

v

MICHAEL A. DOUGLAS
    Defendant and Third Party Plaintiff

v

NORMAN C. BLOOM, NORMAN R. BLOOM
REVOCABLE TRUST, NORMAN R. BLOOM
FAMILY SPRAY TRUST and NORMAN R.
BLOOM IRREVOCABLE INSURANCE
TRUST
    Third Party Defendants

CASE NUMBER: 3:02CV907(PCD)

OCTOBER 5, 2004

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF
### MOTION FOR PERMISSION TO DISCLOSE EXPERT

Defendant[1] Michael Douglas respectfully submits the following in support of his Motion for Permission to Disclose Expert ("Motion to Disclose") dated September 1, 2004 and in opposition to plaintiff's objection dated September 21, 2004:

The relevant factual and procedural background is set forth in defendant's Motion For Permission to Disclose Expert and in defendant's Opposition to Summary Judgment dated April 15, 2004. For purposes of this motion, it is primarily relevant that the underlying dispute involves a contract that in part provides for a fee to defendant based on a percentage of the value of assets contained in plaintiff's share of his father's estate. See, Exhibit A to Motion to Disclose. Those

---

[1] For ease of reading, defendant/third party plaintiff Michael Douglas is referred to as "defendant" and plaintiff/third party defendants are referred to as "plaintiff."

assets include a one-sixth interest in Tallmadge Brothers, Inc. and leasing rights to State-owned oyster beds. Valuation of those assets will involve a complex analysis of the oyster industry and the factfinder will benefit greatly from expert testimony. (Douglas Affidavit, Exhibit A).

Plaintiff, in his opposition memorandum, does not challenge defendant's position that the valuation issues in this case will benefit from expert testimony. Instead, he urges the Court to deny defendant's Motion based on unsubstantiated collateral allegations about defendant's alleged "bad behavior" on unrelated issues. Although each of these arguments is collateral to the primary issue (the advantage of expert testimony), they are nonetheless addressed in turn below.

First, plaintiff argues that defendant is "hiding behind" his attorney/client privilege in order to obtain a ruling from the Court.[2] Presumably, this argument refers to the undersigned's representation that the casefile received from prior counsel contains several written requests from defendant urging disclosure of an expert on the issue of valuation. Motion to Disclose ¶ 7. Defendant's prior counsel clearly failed to heed their client's request, and thereby let pass the Court's deadline. Douglas Affidavit, Exhibt A. Prior counsel's failure to comply with the Court order was not the fault of Mr. Douglas. The present Motion requests that the Court avoid punishing defendant for the mistakes of his prior attorneys.

The actual representations were not attached because they are contained in memoranda whose subject matter includes many subjects beyond expert testimony, the one issue raised by defendant's motion. Attached to this Reply, however, are redacted versions of two letters from Defendant to prior

---

[2] Without citing any specific example, plaintiffs state that defendant's counsel "once again" bases a motion on errors committed by its predecessor without documentary support. Pl. Obj. p. 1. This argument could only refer to defendant's Motion to Extend Time dated February 26, 2004 or Defendant's Opposition to Summary Judgment, dated April 15, 2004. Both included documentary support and both were granted by the Court.

counsel. Exhibits B and C.[3] Both clearly show that defendant was aware of the September 19th, 2003 deadline, and that he suggested more than one expert related to valuation of oyster grounds.

Next, plaintiff states that defendant's expert disclosure of attorney Sid Miller[4] was disclosed, not by the September 19, 2003 deadline, but rather on December 3, 2003. This does not appear to be correct. While plaintiff includes just a single page of the disclosure, faxed on December 3, 2003, the full document bears a certification in which George Ciampa swears that service was accomplished on September 17, 2003, two days before the deadline. (Exhibit D). Further, it is entirely irrelevant to the present motion. If plaintiff took issue with the timing of attorney Miller's disclosure, his remedy was to object to the disclosure or move to preclude his testimony. Since plaintiff chose to do neither, he can not now complain of that alleged wrong in the context of an unrelated issue.

Plaintiff next argues that defendant failed to produce himself or attorney Miller for deposition. With respect to Miller, the undersigned's review of the file does not reveal a notice of deposition or subpoena that would have required such an appearance. Nor does it reveal any correspondence between plaintiff's counsel and defendant's prior counsel on the subject. Plaintiff's counsel has **never** raised the issue with present counsel.[5]

---

[3] Defendant affirms his attorney-client privilege with respect to other representations. If requested, defendant will provide the Court with unredacted versions should the Court deem it necessary to inspect them as part of an *in camera* review.

[4] Attorney Sid Miller's September 19, 2004 disclosure relates to the unauthorized practice of law issues raised in this case.

[5] Plaintiff took Defendant's deposition on June 9, 2004. At the end of the deposition, plaintiff's counsel (Frederick Lovejoy) inquired about defendant's availability for deposition. The undersigned informed Mr. Lovejoy that, if he would provide proposed dates for Mr. Dougls' deposition, we would make him available promptly. There has been nothing but resounding silence from plaintiff's counsel over the succeeding months. We are still more than willing to make Mr. Douglas available for deposition.

With respect to defendant, plaintiff argues (as he has in every recent writing to the Court) that defendant failed to appear for deposition on five occasions. This "argument" is irrelevant to the present motion, which concerns whether an additional expert is warranted under the circumstances. Moreover, it is difficult to believe that defendant's deposition is a priority. The last Notice of Deposition for defendant appears to be dated November 20, 2003, almost one year ago. The undersigned was not in the case then, and was not privy to why the deposition did not go forward. If, however, plaintiff believed defendant has acted wrongfully, he had simply to file a Motion to Compel. See, FRCP Rule 37.[6] He did not.

Finally, plaintiff makes the "floodgate" argument that permitting an additional expert would open the door for both parties. Defendant recognizes this as a concern, and accordingly requests permission to disclose only <u>one</u> additional expert. He has no objection to plaintiff doing the same in response. As no trial date is yet set, both parties should have ample time to arrange a additional depositions for each expert – if plaintiff can find one. Moreover, as detailed above, any burden to the parties is more than outweighed by the importance of expert testimony to the valuation issues in this case.

                THE DEFENDANT/THIRD PARTY PLAINTIFF
                MICHAEL A. DOUGLAS

                BY _____
                Joshua D. Lanning (ct 24529)
                JACOBS, GRUDBERG, BELT & DOW, P.C.
                350 Orange Street
                P.O. Box 606
                New Haven, CT 06503
                (203) 772-3100

---

[6] It should be noted that plaintiff only appeared for deposition pursuant to the Court's Order dated April 15, 2004, compelling his attendance.

## CERTIFICATION

I hereby certify that a copy of the Defendant's Reply Brief In Support of Motion for Permission to Disclose Expert was mailed first class, postage prepaid sent October 5, 2004, to:

Frederick Lovejoy, Esq.
P.O. Box 56
Easton, CT  06612

_Joshua D. Lanning_

# EXHIBIT A

## AFFIDAVIT OF MICHAEL DOUGLAS IN SUPPORT OF MOTION FOR PERMISSION TO DISCLOSE EXPERT

I, Michael A. Douglas, under penalty of perjury, affirm and swear to following:

1- In June of 1995, I was retained by Norman C. Bloom individually and as trustee of the various trusts that are third party defendants in this action (collectively "Bloom").

2- My role was to be that of consultant in the effort to help Bloom acquire an appropriate interest in the estate of Norman R. Bloom, Norman C. Bloom's father.

3- One item in that estate which had unique value was the rights to oyster and clam beds owned by Norman R. Bloom's estate.

4- The rights to the clam and oyster grounds was owned by Tallmadge Bothers, Inc. One half of Tallmadge Brothers, Inc.'s stock was owned by the Estate of Norman R. Bloom.

5- Tallmadge Brothers, Inc., by and through its agents, has authored many documents claiming that in various years the clam and oyster grounds generate revenues of approximately $50,000,000 (fifty million) annually. Not all grounds are capable of such a yield.

6- Of particular importance to Bloom were the extremely valuable "Prime Setting Grounds" whose rights were owned by Tallmadge Bros. Inc.

7- These "beds" are of such unique value that "Bloom" insisted to me that no settlement would be achieved without "Bloom" receiving a one-sixth share of the clam and oyster grounds.

8- The value of the grounds was specifically included in the retainer signed by me and "Bloom."

9- When the present litigation began, I expressed to my prior attorneys Robert Slavitt and George Ciampa the need for a "grounds" expert because of their unique value.

10- Throughout the litigation, I reminded both attorneys of the importance of an expert on the value of these clam and oyster grounds.

11- I did much of the expert research myself, and in fact suggested more than one expert to Ciampa and Slavitt. During their representation, I interviewed and sent Slavitt and Ciampa resumes and *curriculum vitae* of such experts and on various occasions requested them to finalize our retention of such an expert.

12- I incurred personal expenses in researching and securing these experts on my own.

13- I was aware that the Court's expert disclosure deadline was September 19, 2003 and encouraged my prior attorneys to disclose an expert by that date

14- But along with other troubling behavior by Slavitt they never did so.

*[Signed: Michael Dorf  October 5, 2004 (date)]*

# EXHIBIT B

**Michael A. Douglas**
**Attorney At Law**



| | | | |
|---|---|---|---|
| To: | George Ciampa | From: | Michael A. Douglas |
| Fax: | 1 203-866-9724 | Pages: | 1 |
| Phone: | 1 203-838-7555 | Date: | 9/8/03 |
| Re: | Bloom | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Dear George

The following is a summary of matters dealt with last week:

3-I meet with the "Grounds" expert        last Wednesday 9/3/03

I have already done so and expect same. Upon receipt I shall then be able to get a "Grounds" expert working. I am assuming that since Lovejoy asked for extentions that the 9/19/03 date for our expert report will also be extended. If not I am confident we can meet the deadline.

I probably am available at end of this week.

Regards

Mike

# EXHIBIT C

TO: George Ciampa FAX: 203-866-9724
FROM: Michael Douglas

Dear George:

RE: Bloom

1- September 19th at 9:30AM should be fine and we should have plenty of time to be ready.

2- Value of the grounds: a- I have expressed mailed you documents according to my records I have previously sent you in reference to 1) Iroquois 2) Surveys 3) Tran Energy.

Regards

Mike

PS; Here are two others experts

Confirmation Report – Memory Send

```
                                    Page       : 001
                                    Date & Time: Aug-27-03  14:54
                                    Line 1     : 6466020075
                                    Line 2     :
                                    Machine ID : Kinkos-Gramercy Park

Job number          :  799

Date                :  Aug-27 14:53

To                  :  ☎12038669724

Number of pages     :  002

Start time          :  Aug-27 14:53

End time            :  Aug-27 14:54

Pages sent          :  002

Status              :  OK

Job number   : 799           *** SEND SUCCESSFUL ***
```

TO: George Ciampa FAX: 203-866-9724
FROM: Michael Douglas

Dear George:

RE: Bloom

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
NORMAN C. BLOOM,
    Plaintiff

    v.                                                                                    3:02-CV-907 (PCD)

MICHAEL A. DOUGLAS,
    Defendant.
------------------------------------------------------------X
MICHAEL A. DOUGLAS,
    Third-Party Plaintiff

    v.

NORMAN C. BLOOM, NORMAN R.
BLOOM REVOCABLE TRUST,
NORMAN R. BLOOM FAMILY SPRAY
TRUST and NORMAN R. BLOOM
IRREVOCABLE INSURANCE TRUST,                      NOVEMBER 17, 2003
    Third-Party Defendants
------------------------------------------------------------X

**DEFENDANT/THIRD-PARTY PLAINTIFF'S
DISCLOSURE OF EXPERT WITNESS**

    In accordance with Fed.R.Civ.P. 26(a)(2), Michael A. Douglas discloses to the plaintiff and to the third-party defendants the expert witness who will be used at trial to present evidence under Fed.R.Evid. 702, 703, 704, and 705.

    1.    Attorney Sid M. Miller, Miller & Goldman, 2764 Whitney Avenue, Hamden, CT 06518-2590 [(203) 281-3223].

2. The signed report of the witness, together with the statements required by Fed.R.Civ.P. 26(a)(2)(B), accompanies this disclosure.

3. The opinion of the expert, as described in his report, is based on a description supplied by Michael A. Douglas of his interaction during the course of his engagement by the plaintiff Norman C. Bloom, with Mr. Bloom, with the plaintiff's attorneys, and with other persons concerned with the plaintiff's business affairs. As appears in the accompanying report, the expert bases his opinion on the inferences fairly drawn from the descriptions, that Michael A. Douglas did not provide the plaintiff with opinions as to how the laws of any jurisdiction affected or would affect the plaintiff, did not draft any documents particularized for the plaintiff that would affect or were intended to affect contractual or other legal rights, did not provide the plaintiff with any opinions as to the legal effect of any documents, and did not provide the plaintiff with opinions as to the legal effect of his business activities. The expert also inferred from these descriptions that Michael A. Douglas assisted the plaintiff to understand the extent of his holdings, to develop negotiation strategies, and to select professionals such as attorneys who provided services that Michael A. Douglas would not provide.

4. Mr. Miller practices law in Hamden, Connecticut. His c.v., a list of his publications within the last ten years in the field of the authorized practice of law, and a list of his case participation as an expert (all of which occurred more than four years ago), are attached.

5. Mr. Miller's fee schedule for his participation in this matter is two hundred twenty-five dollars ($225) per hour.

MICHAEL A. DOUGLAS,
DEFENDANT/THIRD-PARTY PLAINTIFF

By: _____
George R. Ciampa (ct03551)
SLAVITT, CONNERY & VARDAMIS
His Attorneys
618 West Avenue
Norwalk, CT 06850
(203) 838-7555
(203) 866-9724 (telefax)

3

## CERTIFICATE OF SERVICE

This is to certify that on this day, I mailed a copy of the foregoing "Defendant/Third-Party Plaintiff's Disclosure of Expert Witness," postage prepaid, first class regular mail, to the following:

Frederick A. Lovejoy, Esq.
Lovejoy & Associates
276 Center Road
Easton, CT 06612
*(Attorney for plaintiff and third-party defendants)*

Date: November 17, 2003

_____
George R. Ciampa