UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
NORMAN C. BLOOM,
                Plaintiff

                                            3:02CV907(PCD)

v.

MICHAEL A. DOUGLAS,
                Defendant and Third
                Party Plaintiff

v.

NORMAN C. BLOOM, NORMAN R.                       February 11, 2005
BLOOM RECOVABLE TRUST,
NORMAN R. BLOOM FAMILY SPRAY TRUST
and NORMAN R. BLOOM IRREVOCABLE
INSURANCE TRUST
                Third Party Defendants

## DEFENDANT'S OPPOSITION TO PLAINTIFF/THIRD PARTY DEFENDANTS' MOTION *IN LIMINE* DATED JANUARY 14, 2005

Defendant/third party plaintiff Michael Douglas[1] respectfully submits this memorandum in opposition to plaintiff/third party defendants' Motion *In Limine* dated January 14, 2005. In brief, plaintiff's Motion should be denied because 1) plaintiff never sought to resolve these issues with present counsel and has not filed a Local Rule 37(2) affidavit to that effect; 2) the deposition cancellations were substantially justified for health or other reasons of which Attorney Lovejoy was made aware; 3) since the undersigned's appearance a year ago, plaintiff was given multiple opportunities to take Douglas' deposition, all of which were declined; and 4) even if defendant's conduct was remiss, which it was not, plaintiff is at least as guilty of the dilatory conduct about which he complains.

---

[1] Per the Courts earlier suggestion, plaintiff/third party defendants are hereinafter referred to as "plaintiff" and defendant/third party plaintiff is referred to as "defendant."

A.   **Factual and Procedural Background**

This case was filed on May 24, 2002. From that time until February of 2004 the matter was litigated on behalf of defendant by attorneys Robert Slavitt and George Ciampa. Present counsel first filed an appearance on February 26, 2004. Since that time, plaintiff has sought to resolve with us <u>none</u> of the issues raised in his Motion *in Limine*.

The case we inherited had a procedural history that can only be described as "ugly." There was an obvious history of hostility between plaintiff's counsel Frederick Lovejoy and our predecessors. There were serious questions about whether our predecessors had aggressively litigated defendant's claim, accompanied by questions of their conflict of interest. [See Douglas Aff. Docket No. 57; Lovejoy Letter Ex. A]. There was a pending motion to compel plaintiff Norman C. Bloom's deposition, which he appears to that point to have refused. [Docket No. 35]. Attorney Lovejoy was complaining about his failure to take defendant's deposition (though no motion to compel was ever filed). Plaintiff's Motion for Summary Judgment [Docket No. 47], with more than one hundred pages of submissions, was pending. [Docket No.'s 48-53]. Although we had not yet received the seven boxes of evidence and pleadings from prior counsel, attorney Lovejoy refused our request for more time. [Docket No. 64 ¶ 11]. Out of left field, he also accused present counsel Joshua Lanning of having *ex parte* conversations with the Court.

To borrow a phrase from attorney Lovejoy, "put simply" this has been unpleasant litigation. And notwithstanding present counsel's attempts, remaining above the fray has been virtually impossible. Relevant to the pending motion, over the past year, we have done everything short of delivering defendant Michael Douglas' to Attorney Lovejoy's doorstep. At each stage, he rebuffed our offers, only now to martyr his client to the Court on the eve of trial. Under these circumstances, sanctions are inappropriate.

**B.     Plaintiff's Motion *In Limine* Should Be Denied For Failure to Comply With Local Rule of Civil Procedure, Rule 37**

The most glaring problem with plaintiff's Motion, and indeed with plaintiff's entire litigation strategy, is his flat unwillingness to cooperate with present counsel to resolve issues of conflict. Though present counsel was at all times willing to work with plaintiff on these issues, plaintiff chose instead to ignore all such overtures, only to complain to the Court on the eve of trial about prejudice created primarily by his own unwillingness to seek an amicable resolution.

Indeed plaintiff refuses to cooperate even when it is required by rule. Specifically, prior to filing the present Motion requesting Rule 37 sanctions, he neither contacted present counsel to resolve any of these issues, nor did he file an affidavit averring the same as required by Local Rule of Civil Procedure, Rule 37. That rule provides:

> No motion pursuant to Rules 26 through 37, Fed. R. Civ. P., shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail and in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the Court, as part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and has been unable to reach such an agreement.

L.R.Civ.P. Rule 37(2) (2004) (emphasis added). "The purpose of this rule is . . . to discourage recourse to the judicial dispute resolution process for matters ancillary to the litigation that can often be resolved by agreement if proper efforts are made. Jenkins v. Toyota, Japan 106 F.R.D. 185 (DCNY 1984) (discussing identical rule and denying discovery motion for failure to comply); Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94 (SDNY 1997) (same).

All the issues raised in plaintiff's Motion could have been resolved earlier, and more amicably. In the year since present counsel's appearance, however, plaintiff has refused to take Michael Douglas' deposition, though it was offered on several occasions. [See infra § D-2]. Moreover, in the past year plaintiff has <u>not once</u> requested to depose plaintiff's expert Sid Miller nor sought from defendant a damages analysis. Because we were not involved before February 2004, present counsel did not even understand the latter two items to be issues until the present Motion *In Limine,* filed on January 21, 2005, over one year after any alleged transgression.

Plaintiff's neglect in raising these issues for more than a year, and until after a change in counsel, is precisely the purpose of Local Rule 37(2). Because plaintiff did not comply with its mandate, and because that failure to comply is the true cause of the prejudice of which he now complains, sanctions are inappropriate.

**C. The Standard for Sanctions**

Discovery sanctions are designed to enforce equity in the legal process. "In final analysis, a court has the responsibility to do justice between man and man; and general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default." Gill v. Stolow, 240 F.2d 669 (2nd Cir. 1957).

Plaintiff asks the Court for two of its harshest sanctions: a dismissal of defendant's counterclaim and/or preclusion of defendant's testimony. This Circuit, however, consistently evinces a strong preference for lawsuits being resolved on their merits. Cody v. Mello, 59 F.3d 13, 15 (2nd Cir. 1995). Thus, dismissal and preclusion are remedies saved for only the most egregious discovery violations. See Jenkins v. City of New York, 2004 WL 2624872 (SDNY Nov.17, 2004) ("courts recognize that preclusion is a drastic remedy appropriate only in rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure"); Malone v. Med Inn Centers of America, LLC, 2004 WL 1080155 (WDNY April 20, 2004) (same); Jones v. NFTA, 836 F.2d 731, 734 (2nd Cir. 1987) (dismissal is a

harsh sanction appropriate only if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party).

Moreover, dismissal and preclusion are appropriate only after prior court order – which plaintiff never pursued. Marfia v. T.C. Ziraat Bankasi, 100 F.3d 243 (2nd Cir. 1996) ("Ordinarily, [default] is imposed only after notice that such a sanction might result from a litigant's conduct.") (Lumbard, J. concurring); Herrera v. Scully, 143 F.R.D. 545 (SDNY 1992) ("the severity of the sanctions should be tempered by a consideration of the equities of the situation, and ... such sanctions may be wholly inappropriate absent an earlier order of the Court to provide or permit discovery"); Jenkins v. City of New York, 2004 WL 2624872 (SDNY Nov.17, 2004) ("Even if plaintiff were unilaterally responsible for the slow progress of this case, other factors weigh against dismissal: the Court has not provided notice that delay might result in dismissal, nor has the Court previously considered lesser sanctions."); West v. Goodyear Tire & Rubber Co., 167 F.3d 776 (2nd Cir. 1999) ("because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.").

**D.    Defendant's Conduct in this Case Does Not Begin to Warrant Sanctions**

**1.    The Deposition Cancellations Were Substantially Justified[2]**

The heart of plaintiff's Motion *In Limine* lies in his purported "inability" to depose Michael Douglas. The problem with plaintiff's argument is that 1) it exaggerates the number of cancelled depositions; 2) what cancellations did happen were substantially justified for reasons attorney Lovejoy was made aware; and 3) since present counsel's appearance one year ago, plaintiff has foregone numerous opportunities to depose Douglas, choosing instead to sit on his hands until trial and claim prejudice.

---

[2] Though each cancellation was substantially justified, defendant has no objection to paying the court reporter for any resulting business loss, as attorney Lovejoy has apparently refused to pay her.

5

Of the "seven noticed depositions" plaintiff repeatedly emphasizes, only four were cancellations, and each cancellation was justified by medical or equally emergent circumstances:

**May 7, 2003**:[3] Plaintiff claims May 7, 2003 as one of five noticed depositions that were cancelled one day prior to the scheduled deposition. Douglas had no conversations with his attorneys about a May 7, 2003 deposition and never asked that a deposition on that date be cancelled. [Ex. B, Douglas Aff. ¶ 3]. More likely, the deposition was marked off by the attorneys, who also cancelled plaintiff Norman C. Bloom's deposition on that date. [Ex. C; see also Ex. A to Plaintiff's Opposition to Motion to Compel, Docket No. 35].[4] Further, unlike other dates, the court reporter did not bill for this one, belying plaintiff's claim that the cancellation was "eleventh hour." [See Pl. Ex. 8].

**August 13, 2003:** On July 28, 2003, plaintiff noticed Douglas' deposition for August 13, 2003. [Pl. Ex. 2]. Just a few days later, however, on August 4, an Amended notice was issued moving the deposition forward one day to August 12, 2003 [Pl. Ex. 3]. Although for rhetorical purposes plaintiff includes August 13, 2003 as one of his "seven noticed dates," it is highly unlikely that the forward move of one day had anything to do with Douglas.

**August 12, 2003:** This deposition was marked off for medical reasons, of which attorney Lovejoy was made aware. On August 11, 2003, Douglas entered Beth Israel Hospital in New York with severe abdominal pain. [Ex. B, Douglas Aff. ¶ 4; Ex. D]. At Beth Israel, he was diagnosed with kidney stones and held past midnight. Dr. Ulies prescribed medication for abdominal pain and vomiting which Douglas filled the next

---

[3] Defense counsel is at something of a disadvantage in piecing together the history of procedural conflicts in this case since we were not involved in much of its hostile litigation.

[4] Bloom's deposition appears to have been cancelled by George R. Ciampa because, despite being served with discovery requests in February of 2003, plaintiff had by May produced nothing. A deposition would accordingly have been futile. [See Defendant's Motion to Compel, Docket No. 32].

day. That Douglas did not make his deposition at 9:30 a.m. (still in pain and just hours after his release) appears to be objectionable only to attorney Lovejoy.

**September 19, 2003:** The September 19, 2003 was cancelled at Douglas' request, though not under the circumstances plaintiff describes. First, it is worth noting that the deposition appears to have been noticed twice: once on August 25, 2003 and again on September 12, 2003, changing the location. [Pl. Ex. 4 and 5]. Both presumably are included when plaintiff talks of "seven noticed depositions."

Prior to that date, Douglas tentatively agreed to a September 19, 2003 deposition, but informed his attorneys of a possible conflict with his business schedule. [Ex. B, Douglas Aff. ¶ 5 and 6]. Douglas is a business consultant to Adamjee Company, a multinational conglomerate working to secure foreign distribution of "Multiferon," a drug used in the treatment of Hepatitis C. Adamjee's distribution area includes the Middle East and most of South Asia, where Hepatitis C is epidemic. Multiferon is produced by a biotech company named Viragen.

Shortly before September 19, 2003, Douglas received word that Viragen was seeking to end Adamjee's distribution rights in most of these territories, jeopardizing an agreement worth millions of dollars to each party.[5] Douglas was called to Florida for a September 19, 2003 meeting at which the issues between Viragen and Adamjee were processed. As Adamjee representatives planned to remain in the United States less than two days, the meeting could not be rescheduled.

Douglas, of course, could not know whether his attorneys discussed this contingency with Attorney Lovejoy when setting the date, but the cancellation was not made in bad faith, and was made as soon as Douglas had notice of the meeting.

**October 15, 2003:** The October 15, 2003 deposition was cancelled for health reasons of which Attorney Lovejoy is aware. By October of 2003 Douglas was still in

---

[5] Plaintiff Norman C. Bloom was also an investor in this venture.

7

serious pain. [Ex. B, Douglas Aff. ¶ 7; Ex. E]. His urologist diagnosed a hernia and scheduled an Operation for October 21st, 2003, with a pre-op appointment to occur on October 15, 2003. In deference to the deposition, Douglas attempted to move the pre-op date, but was informed that any change would push the scheduled surgery back at least three weeks. Douglas immediately wrote his attorney to reschedule the deposition. [Ex. F]. Given his condition, the decision was understandable.

**November 24, 2003:** The November 24, 2003 deposition was cancelled for medical reasons of which Attorney Lovejoy was made aware. On November 21, 2003 Douglas entered Beth Israel Hospital with a flu virus and was placed on antibiotics. [Ex. G]. He was bedridden with the flu until about November 26th, 2003.[6]

Despite plaintiff's repeated employment of the phrase "put simply," the matter is not really so simple. First, although plaintiff emphasizes that Douglas' deposition was noticed on "seven occasions" [Lovejoy Statement ¶ 7] only four of those were cancellations, and of those four, only one (September 19, 2003) was even arguably cancelled at Douglas' discretion. That plaintiff can claim that "Douglas could not make it to his own deposition on seven occasions," when several of these were simple rescheduling or venue changes evidences plaintiff's comfort with exaggerating facts in his favor.

Moreover, that Douglas' attended several witness depositions is not as sinful as plaintiff implies. [Lovejoy Statement ¶ 15]. Richard DiMarco's deposition took place on August 8, 2003, before he got sick. Subsequent to Douglas' hospital admission on August 11, 2003, he was able to attend depositions on August 14 and August 15 only because of painkillers prescribed by his physician. [Ex. B, Douglas Aff. ¶ 4]. He did not participate in any of these proceedings, and clearly did not need to be as "sharp" as he

---

[6] Douglas denies ever giving "Hurricane Isabelle" as a reason to cancel any deposition. [Ex. B, Douglas Aff. ¶ 9].

8

would were he the deponent. The final two depositions were not proximate in time. John Volk was deposed on May of 2003, prior to Douglas' illness. Plaintiff Norman Bloom was deposed (only after Court Order compelling his attendance) on June 6, 2004, well after.

In evaluating the sincerity of plaintiff's Motion, it is worth noting that in a Motion dated October 27, 2003, plaintiff relied on Douglas' illnesses to request a modification of the Court's Scheduling Order. [Docket No. 28 ¶ 6]. This is startling given that now, over one year later, attorney Lovejoy states that he formed his disbelief in Douglas' illness (hospital records notwithstanding) based on Douglas' appearance at subsequent depositions in August, 2003, two months prior to his October Motion. [Lovejoy Statement ¶ 24]. It is hard to avoid the conclusion that Mr. Lovejoy was not being candid with the Court in October of 2003 -- or is not being candid now -- given that his contradictory assertions are based on precisely the same information.

Finally, the inferences attorney Lovejoy draws from his alleged *ex parte* conversation with Douglas border on offensive. [Lovejoy Statement ¶ 21]. That attorney Lovejoy would 1) have an *ex parte* conversation with a represented party and then 2) seek to use that alleged *ex parte* conversation to his tactical advantage is indefensible. See, Conn. Rules of Professional Conduct, Rule 4.2; see also Pauling v. Secretary of Dept. of Interior, 964 F. Supp. 117 (SDNY 1997) (attorney precluded from deposing represented party/witness with whom he engaged in *ex parte* conversation). Douglas denies that such a conversation took place. [Ex B, Douglas Aff. ¶ 10]. In any event, hospital records for the relevant period make Attorney Lovejoy's *ad homonym* inferences moot.

2.      **Plaintiff's Failure to Depose Douglas Over the Past One Year Was Plaintiff's Choice**

Plaintiff's Motion *In Limine* and Attorney Lovejoy's Statement are notable for their complete failure to recount any of the events since fall of 2003. This likely is

9

because, since present counsel's appearance, plaintiff has had a number of opportunities to depose Michael Douglas, but has declined each.

Recognizing that plaintiff has a right to defendant's deposition, and notwithstanding the expiration of the discovery deadline, present counsel made repeated offers to have plaintiff depose Douglas. Specifically, at plaintiff Norman Bloom's deposition on June 9, 2004, defense counsel Ira Grudberg told attorney Lovejoy that if he would suggest deposition dates, attorney Grudberg would make Mr. Douglas available. [Ex. H, Grudberg Aff. ¶ 7]. Attorney Lovejoy responded that he would. In the eight succeeding months, he never has.

On June 17, 2004, attorney Grudberg sent a letter to attorney Lovejoy reiterating the offer. It stated:
> P.S. Why don't you give me some days in the next four to six weeks when you will be available to depose Mr. Douglas. Give me as much lead time as possible and I will get back to you promptly concerning his availability. <u>If we set date, he will appear.</u>

[Exhibit I (emphasis added)]. Attorney Lovejoy suggested no dates. Nor has he since.[7]

Finally, on December 15, 2004, at a Settlement Conference with PJO Lawrence Ianotti, Attorney Lovejoy flatly refused to discuss settlement, complaining that he had "never had the opportunity" to depose Douglas. Speciousness notwithstanding, the undersigned <u>again</u> offered to make Douglas available if attorney Lovejoy would just provide dates. PJO Ianotti also told Mr. Lovejoy that he could and should depose Douglas. True to form, he declined. To make matters worse, he fabricated a story to the effect that defense counsel had undertaken to seek permission from the Court to permit Douglas' deposition to be taken though the discovery deadline had passed. Defense

---

[7] In the succeeding months, Attorney Lovejoy invented the position that present counsel "conditioned" his right to depose Douglas on plaintiff's agreement to re-open discovery. [Docket No. 107]. This is simply untrue.[Ex. H, Grudberg Aff. ¶ 10]. Certainly, our letter of June 17, 2004 neither expressed nor implied anything but an unconditional offer.

10

counsel never discussed such an undertaking with attorney Lovejoy, nor would it have been necessary, as we offered to facilitate a deposition without objection.

There has been nothing but resounding silence from plaintiff on the issue as of now.

### 3. A preclusive order would be unjust

Any determination of sanctions must be equitable. Gill v. Stolow, 240 F.2d 669 C.A.2 1957. In balancing the equities here, the Court should consider that plaintiff is exceedingly guilty of conduct about which he complains.[8]

Plaintiff's Motion *in Limine* is premised on a party's responsibility to participate in discovery and to obey a court's scheduling orders. It is phenomenal therefore that in his near one-hundred page submission, plaintiff fails to mention a) that he himself flatly refused to be deposed until mandated by Court Order; b) that to this day plaintiff has failed to produce more than two documents in response to defendant's requests for production; and c) that plaintiff has willfully ignored not one but two orders related to pre-trial compliance.

    **a.** **Plaintiff's Deposition:** On October 28, 2003, defendant, through prior counsel, filed a Motion to Compel plaintiff Norman C. Bloom's deposition, which they appear to have been unable secure from attorney Lovejoy. [Docket No. 32]. The Motion noted that plaintiff, through counsel had cancelled several noticed depositions and now refused to be deposed. Id. Although plaintiff filed an opposition [Docket No. 35], the Motion was granted on April 15, 2004 [Docket No. 66]. Prior to that, Attorney Lovejoy refused to produce Norman Bloom without a Court order [Ex J to Docket No. 35]. Notably, defendant did not have the benefit of plaintiff's deposition either for his expert's report or for his opposition to plaintiff's Motion for Summary Judgment.

---

[8] Defendant understands "he did it too" is an incomplete defense. Plaintiff's dilatory conduct, however, is offered only to show that, in light of the equities, a severe sanction solely to defendant's disadvantage would be grossly inequitable.

11

The problem with plaintiff's Motion *in Limine* is not just that plaintiff never moved to compel, but that plaintiff never did so even when such a motion was necessary to secure Mr. Bloom's deposition. Under these circumstances, an order striking defendant's counterclaim, or precluding Douglas's testimony would have the ironic result of disadvantaging defendant for following appropriate discovery procedures. Faced with an inability to depose plaintiff, defendant sought and received an Order compelling plaintiff's deposition. In similar circumstances, plaintiff chose to do nothing for more than a year, belatedly asking for the Court's intervention less than two weeks before scheduled Jury Selection.[9] See, *e.g.*, Saleh v. City of Buffalo, 2000 WL 1773472 at * 5 (W.D.N.Y., Nov 27, 2000) ("insofar as the city defendants seek summary judgment as against plaintiffs . . . for their failure to appear for depositions, because such defendants never moved to compel their appearances, this argument is unavailing.").

  b. **Failure to Produce Documents:**  Avoiding his own deposition does not appear to be plaintiff's only effort to avoid discovery. Present counsel's review of the file indicates that prior counsel served plaintiff with two sets of Requests for Production, respectively dated February 25, 2003 and March 28, 2003. Responses, consisting almost exclusively of objections, were not served until August of 2003 at the earliest.[10] [See prior Counsel's repeated inquires to attorney Lovejoy at Ex. J]. Defendant did file a motion to compel, which appears to have been denied without prejudice for failure to comply with this Court's Supplemental Order. [Docket No. 26]. Prior counsel apparently failed to follow up, and to date plaintiff has managed to produce exactly two documents. [Ex. K]. Defendant, by contrast, has produced many hundreds. [Ex. L].

---

[9] Plaintiff's Motion was filed on January 21, 2005. [Docket No. 100, 101, 102]. Jury Selection took place on February 3, 2005.

[10] Present counsel has not been able to piece together why it took more than five months for plaintiff to serve simple objections and a total of two documents. [Exhibit K]. There was plainly no good faith effort to comply. Just as an example, plaintiff objected to turning over his phone records, when he had both asked for and received such records via his own discovery.

  **c.**  **Failure to Comply With the Court's Trial Compliance Order**: Finally, and most incredibly, plaintiff invokes the sanctity of the Court's scheduling orders while contemporaneously failing in his own compliance.[11] On November 10, 2004, this Court issued a Trial Preparation Order mandating that the parties' pre-trial compliance be due in three separate stages. [Docket No. 93]. Section A was due on December 20, 2004, with sections B and C to be due on successive weeks thereafter. Sometime prior to the December 20 deadline, plaintiff sought and received (with our consent) a 30 day extension, moving (per attorney Lovejoy's request) Schedule A's due date to January 20, 2005.

  Plaintiff did not comply with the revised scheduling order.[12] Instead, on the <u>due date</u>, he moved for a second extension of time, [Docket No. 100], simply ignoring the January 20, 2005 deadline.[13] Plaintiff's request was denied [Docket No. 106], and the Court gave plaintiff until February 1, 2005 to comply. He did not. This time, without even requesting a continuance, he simply filed nothing. To date, and with trial approaching, defendant remains in the dark about plaintiff's pre-trial compliance, though his own compliance was sent on January 20 – three weeks ago.

**4. DOUGLAS' EXPERT SHOULD NOT BE PRECLUDED**

  Plaintiff has had defendant's expert disclosure since November of 2003.[14] At that time 1) the case was not trial ready; 2) plaintiff's Motion for Summary Judgment had not

---

[11] Plaintiff, for example, cites language like this: "exclusion of a witness appropriate where party fails to comply with scheduling order without adequate explanation." [Pl. Mem. supporting Motion *In Limine* p. 21].

[12] Stunningly, plaintiff reaffirmed the January 20, 2005 deadline in his January 14, 2005 Motion *in Limine* [p. 19 n. 5] and then only six days later, failed to comply.

[13] Defendant complied. [Docket No. 99].

[14] Although Attorney Lovejoy claims that defendant's expert was not disclosed until December 2003 [Lovejoy Statement ¶ 29], prior defense counsel George R. Ciampa vigorously disputes that charge. [Exhibit M]. Plaintiff's Exhibit 15 only shows that after its initial disclosure, a copy was later re-sent by telefax, which is entirely consistent with attorney Ciampa's statement and with present counsel's experience. It is not out of character for attorney Lovejoy to lose documents.

even been filed and; 3) it would be over a year before a Pre-trial Compliance Order would be issued. In the time between then and now, plaintiff not once sought to depose plaintiff's expert, nor otherwise raise the issue with present counsel. Now, on the eve of trial, plaintiff seeks court intervention to cure the "prejudice" of a late expert disclosure.

"Preclusion of expert testimony is generally ordered only where the court finds that the party's failure to comply with the [disclosure] requirements was both unjustified and prejudicial." Virgin Enterprises Ltd. v. American Longevity, 2001 WL 34324729 (SDNY March 1, 2001). In determining whether to preclude an expert for late disclosure, a court will look to prejudice, ability to cure, disruption of trial efficiency and bad faith. See, *e.g.*, Wolak v. Spucci, 217 F.3d 157 (2nd Cir. 2000).

Here, defendant's one-month delay in disclosing an expert far more than a year ago does not warrant such an extreme and prejudicial sanction. Prejudice to plaintiff is more than questionable. Plaintiff has had attorney Miller's comprehensive expert report for fifteen months. At any time since the disclosure, plaintiff could have requested to depose attorney Miller, either to the Court, or to present counsel who would gladly have made him available. The real prejudice comes from plaintiff's failure to raise the issue for over a year at which time the issue could have been resolved in an amicable fashion. Strougo v. BEA Assoc., 188 F. Supp.2d 373, 380 (SDNY 2002) ("[a]ny prejudice caused by untimely disclosure was remedied by the availability of those months during which plaintiff could depose the expert.").

Plaintiff emphasizes that, regarding trial efficiency, "the age of this case and its relatively advanced state on the calendar counsel for outright preclusion." [Pl. Mem. p. 20]. The problem with that argument is that it was plaintiff's decision to leave this issue

---

After filing plaintiff's Motion for Summary Judgment, he managed to lose hundreds of pages of documents submitted in support of the Motion and in fact called on present counsel to make him copies which we did. He also has called on several occasions claming not to have received documents we sent to his updated address. All such documents were either faxed or re-sent without complaint.

until the eve of trial. Since present counsel's appearance in February 2004, plaintiff's counsel never raised the issue with us and, quite frankly, we knew of no claimed prejudice until now.[15] Had we known, we would have offered attorney Miller for deposition without objection. Since the claimed transgression occurred in 2003, "trial efficiency" in 2005 need not have been implicated at all.

Finally, although present counsel was not involved at the time of disclosure, the record indicates no bad faith. In fact, attorney prior counsel George Ciampa disputes most of the assertions in attorney Lovejoy's 28 U.S.C. § 1746 Statement. [Ex. M]. In short, although the disclosure appears to have been made approximately one month late, the record does not indicate any intentional delay or malicious intent.

The Second Circuit cases plaintiff cites are inapposite, as each involved unconscionable delay and prejudice. In Kaufman v. National R.R. Passenger Corp., 2004 WL 78148 (D. Conn. Jan. 15, 2005), plaintiff faxed to defendant a medical report bearing a new expert's opinion in December 2003 where jury selection was scheduled to begin the same month.[16] In Hyun v. South Kent School, 1997 WL 597122 (D. Conn. Sept. 17, 1997), notwithstanding a June 1, 1996 deadline, plaintiffs did not disclose their expert until approximately August 21, 1997, more than one year later and only days before scheduled jury selection. In Eadie v. McMahon, 199 F.R.D. 45 (D. Conn. 2001), the plaintiff sought to disclose an additional expert almost seven years after the original discovery deadline expired. In Equant Integrations Services, Inc. v. United Rental, 217 F.R.D. 113, 117 (D. Conn. 2003), the defendant disclosed a supplemental expert report after the relevant deadline and literally the night before the expert was deposed. In Wolak v. Spucci, 217 F.3d 157 (2nd Cir. 2000), plaintiff disclosed her expert "three weeks

---

[15] Again, this is exactly why Local Rule 37(2) requires parties to attempt resolution of these issues prior to filing requesting Court intervention.

[16] Plaintiff's citation to Kaufman is curious given this Court's criticism of that plaintiff's failure to comply with its Trial Compliance Order.

15

before trial and almost a year after she should have disclosed the names of any experts".
In <u>Furlong v. Circle Line Statue of Liberty Ferry, Inc.</u>, 902 F. Supp. 65 (SDNY 1995) defendant submitted its expert report on August 31, 1995, well after the December 15, 1994 discovery deadline <u>and</u> after the parties' pre-trial order was submitted in June 1995, making the case trial ready.

Certainly plaintiff was entitled to a timely expert disclosure. Having received such disclosure fifteen months ago, however, he was not entitled to fertilize what was at best only minimal prejudice by ignoring the issue until trial. The argument <u>might</u> have merit if defendant's disclosure occurred this month, last month, or even the month before. But since plaintiff had ample time to seek a sufficient cure for any claimed prejudice, and did not do so, his motion to preclude should be denied.

## 5.   THE DAMAGE ANALYSIS

In the year since present counsel's appearance, plaintiff's January 14, 2005 Motion *In Limine* is the first we've known of this issue. Nor does a review of Mr. Lovejoy's correspondence with prior counsel indicate that a damage analysis was ever an issue.

Indeed, in a review of our file, we have been unable to find that plaintiff's own Damage Analysis was ever served, as was required under the parties' original Scheduling Order. On February 4, 2004 we requested from attorney Lovejoy a copy of such Analysis, if in fact it existed. [Ex. N]. To date, nothing has been produced.

Finally, plaintiff can not sincerely claim prejudice. Defendant's damage claim is based solely on the formula's set forth in the parties' original Agreement, and the Amendments thereto. Nothing at trial will be a surprise.

E.  **Conclusion**

For the foregoing reasons, plaintiff's Motion *in Limine* should be denied.

THE DEFENDANT/THIRD PARTY PLAINTIFF
MICHAEL A. DOUGLAS

BY _____
Joshua D. Lanning (ct 24529)
JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
350 Orange Street, P.O. Box 606
New Haven, CT 06503
Phone: (203) 772-3100
Fax: (203) 772-1691
E-Mail: jlanning@jacobslaw.com

## **CERTIFICATION**

I hereby certify that a copy of the Defendant's Opposition To Plaintiff/Third Party Defendants' Motion *In Limine* Dated January 14, 2005, was mailed first class, postage prepaid on February 11, 2005, to:

Frederick Lovejoy, Esq.
P.O. Box 56
Easton, CT  06612

*Joshua D. Lanning*