UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 FEB 22 P 2: 56

U.S. DISTRICT COURT
NEW HAVEN, CT

------------------------------------X
NORMAN C. BLOOM,
    *Plaintiff,*

    v.

MICHAEL A. DOUGLAS, ESQ.,
    *Defendant.*
------------------------------------X
MICHAEL A. DOUGLAS, ESQ.,
    *Third-Party Plaintiff,*

    v.

NORMAN R. BLOOM REVOCABLE TRUST,
NORMAN R. BLOOM FAMILY SPRAY
TRUST, and NORMAN R. BLOOM
IRREVOCABLE INSURANCE TRUST
    *Third-Party Defendants.*
------------------------------------X

3:02CV00907(PCD)

February 18, 2005

PLAINTIFF NORMAN C. BLOOM AND THIRD-PARTY DEFENDANTS
NORMAN R. BLOOM REVOCABLE TRUST, NORMAN R. BLOOM FAMILY
SPRAY TRUST, AND NORMAN R. BLOOM IRREVOCABLE INSURANCE
TRUST'S[1] REPLY TO "DEFENDANT'S OPPOSITION TO PLAINTIFF/THIRD-
PARTY DEFENDANTS' MOTION IN LIMINE DATED JANUARY 14, 2005"
(DATED FEBRUARY 11, 2005 - DOCKET NO. 111)

Plaintiff respectfully submits this Reply Memorandum in response to "Defendant's Opposition to Plaintiff/Third-Party Defendants' Motion in Limine Dated January 14, 2005" (dated February 11, 2005 – Docket No. 111), and in support of Bloom's Motion In Limine dated January 14, 2005 (Docket No. 101 and 102).

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

---

[1] Plaintiff Norman C. Bloom and third-party defendants Norman R. Bloom Revocable Trust, Norman R. Bloom Family Spray Trust, and Norman R. Bloom Irrevocable Insurance Trust will be referred to as Bloom.

1

Defendant/third-party plaintiff Michael A. Douglas's[2] contention that a preclusion order from this court would be unjust is specious, compelling Bloom to try a case without the benefit of: 1) the deposition of Attorney Douglas; 2) the deposition of his expert witness who was belatedly disclosed; 3) the cross-examination of numerous fact witnesses and expert witnesses never disclosed as required by Fed.R.Civ.P., Rule 26(a) and only disclosed on January 20, 2005; and 4) having never served a damages analysis as required by order of this court, is far more unjust than precluding Attorney Douglas herein. Unfortunately, present counsel for Attorney Douglas spends the majority of his seventeen (17) page Memorandum in Opposition personally attacking counsel for Bloom. That diversion should be seen for what it really is – a smokescreen in an attempt to divert the Court from the monumentous and continued failure of Attorney Douglas[3] to meet his obligations in respect to discovery in this matter.

Simply stated, Attorney Douglas failed to provide/comply with the following discovery, either required by: 1) Fed.R.Civ.P., Rule 26(a)(1)(A), 2) the Scheduling Order of this Court, or 3) Orders of this Court. In particular, Attorney Douglas:

**1)      Failed to serve a Fed.R.Civ.P. Rule 26(a)(1)(A) Initial Disclosure; Bloom, however, did. (See Exhibit 1) In Attorney Douglas's January 20, 2005 compliance with Trial Preparation Order he lists 40 witnesses. Unfortunately, out of those 40 witnesses disclosed, Bloom was not aware that 28 of those witnesses were witnesses with discoverable information as contemplated by Fed.R.Civ.P., Rule 26(a)(1)(A).[4]**

---

[2] Defendant Michael A. Douglas will be referred to as Attorney Douglas.

[3] It should be remembered that Attorney Douglas is not merely a non-lawyer who is foreign to the rules of discovery, but a licensed attorney, admitted since 1967 to the Bar of the State of New York.

[4] In Attorney Douglas's January 20, 2005 Trial Preparation Order, he lists 40 witnesses that he intends to call at trial. Many of those witnesses were never disclosed pursuant to Fed.R.Civ.P., Rule 26(a)(1)(A), and thus will be the subject of requests to preclude because Bloom was never given a fair opportunity to depose them.

2

**2)      Failed to serve a damage analysis pursuant to the Court-endorsed Scheduling Order herein; Bloom, however, did. (See Exhibit 2) Prior to the December 15, 2004 Settlement Conference, Attorney Douglas and his previous counsel had at all times asserted that Attorney Douglas was owed $303,000.00. At the settlement conference for the first time, Attorney Douglas claimed he was owed $482,000.00.**

**3)      Failed to timely produce his expert report (Bloom, however, did) or to produce his expert pursuant to a valid Notice of Expert Deposition to be deposed (See Exhibit 3) (Attorney Douglas never served a Notice of Deposition for Professor Dennis Curtis);**

**4)      Failed to repeatedly appear for his own deposition;**

**5)      Caused a number of depositions to be postponed or rescheduled because he insisted on being present at each and every deposition taken; however, Bloom never did.**

The repeated failure of Attorney Douglas to comply with discovery herein is best stated by his former counsel in their January 19, 2004 "Motion of Robert A. Slavitt and George R. Ciampa to Withdraw their Appearances in Behalf of Michael A. Douglas." (Docket No. 54)

They state in pertinent part:

> Messrs. Slavitt and Ciampa, each of whom has entered his appearance in behalf of Michael A. Douglas, move for leave to withdraw. See D.Conn.L.Civ.R. 15.
>
> The defendant's attorneys do not enjoy the confidence of <u>Mr. Douglas, who has repeatedly rejected their advice</u> concerning
>
> •      The importance of his attending his own deposition. <u>Despite its having several times been noticed for dates Mr. Douglas has said were available to him, he failed to appear on any of these dates,</u> despite the movants' admonition that this failure would materially and adversely affect his position.
>
> •      <u>The necessity of his responding to written discovery requests.</u> The movants have always counseled Mr. Douglas of his need to supply them with

3

responsive documents culled form his own records, and to arrange them in categories corresponding to the requests. <u>Although he has provided many documents, the undersigned counsel do not believe he has conducted a record search so thorough that they can certify that the disclosure is complete, as is contemplated by Fed.R.Civ.P. 26(g)(1).</u>

- <u>The need for his prompt selection and retention of at least one expert witness</u>. Only after months of repetitive urging by the undersigned did Mr. Douglas retain such an expert. Even then, <u>his retention was not timely, so that the expert's report was prepared after the deadline in the court's scheduling order, and is consequently now the subject of a motion to preclude the report as untimely.</u>

\* \* \*

- The importance of Mr. Douglas' working with his attorneys in crafting his opposition to the pending motion for summary judgment. His attorneys have been unsuccessful in reaching him by telephone and have mailed and faxed letters to him advising of the need that he appear immediately in this office to help prepare the opposing papers, including his own affidavit. There has never been a response.

\* \* \*

In light of these circumstances, the undersigned seek leave to withdraw their appearances.

(emphasis ours) (See Exhibit 4)

Additionally, the Court will remember that it found in its January 6, 2004 Order (Docket No. 46) that, "<u>The failure of defendant to maintain communication with his attorney constitutes a basis for his being defaulted.</u>" (emphasis added)

Simply stated, how much of Attorney Douglas's shenanigans are the Court and Bloom supposed to endure, especially when it has resulted in substantial delay, repeated and substantial prejudice to Bloom and additional unwarranted costs to the Court and legal fees to Bloom.

Attorney Douglas and his counsel's habit of saying one thing and then doing another is amply demonstrated by the example of the nonpayment of the Court Reporter Marion Strachman's invoice, which the undersigned sent to both Attorney Douglas's former counsel on January 9, 2003, and his present counsel on June 11, 2004. Both Attorney Douglas's prior and

present counsel intimated that Attorney Douglas would pay (See Exhibits 5 and 6), but no payment ever was made by either attorney. Miraculously, now that the nonpayment was made part of Bloom's motion, Attorney Douglas's present counsel is in the front row, ready, willing and able to pay.

### BACKGROUND WITH RESPECT TO THE DEPOSITION OF DEFENDANT MICHAEL A. DOUGLAS

As the record is quite clear, the undersigned attempted to take the deposition repeatedly for a period of six months. Thereafter, as Attorney Douglas's new counsel does not controvert, in the presence of Attorney Douglas at the deposition of Bloom, on June 9, 2004, I requested dates for Attorney Douglas's deposition. Attorney Douglas and his counsel, however, would not agree to provide a date for his deposition while we were all present, and a date could have easily been agreed to. There were also strings attached by Attorney Douglas's counsel's consent; i.e., that Attorney Douglas be allowed to belatedly reopen discovery. On June 11, 2004, I wrote Ira Grudberg, Esq. to once again breach the subject and to provide the Court Reporter's invoice. (See Exhibit 6) Thereafter, during the week of June 21, 2004, I telephoned Mr. Grudberg about Attorney Douglas's deposition, but again there was no concrete commitment.

While counsel for Attorney Douglas did state in papers that they would agree to allow Attorney Douglas to be deposed, no dates were ever forthcoming. It was as always a cat and mouse game.

At the settlement conference before PJO Iannotti, he did inquire how Bloom wished to proceed with Attorney Douglas. Since we had already invested a considerable amount of time in researching and preparing a Motion In Limine, I indicated that Bloom intended to move to preclude.

5

While we can understand why Attorney Douglas's counsel stated to PJO Iannotti that they would consent to Attorney Douglas being deposed, such an offer shortly before trial is clearly prejudicial to Bloom.

Simply stated, there were many, many opportunities prior to the deadline for the close of discovery that Attorney Douglas could have allowed himself to be deposed; i.e., on many other dates than those he belatedly cancelled. Attorney Douglas never did go out of his way to get himself deposed, and Bloom has been substantially prejudiced by his actions, and his alone.

Attorney Douglas's counsel's claim that Bloom himself somehow subverted discovery in this case and, as such, that is a justification for the Court not granting Bloom's motion, is disingenuous.

Mr. Lanning is correct that Norman C. Bloom's deposition was "officially" noticed on three occasions; i.e., April 15, 2003, May 7, 2003 and August 7, 2003. Additionally, <u>two or three other dates</u> were agreed to by counsel but cancelled because Attorney Douglas wanted to attend all depositions and those dates were not open for him.[5] Additionally, Attorney Douglas's former counsel admitted that the August 7, 2003 date agreed to for the deposition of Norman C. Bloom by counsel was cancelled by Attorney Douglas, himself. Attorney Ciampa stated at para. 5 of "Defendant/Third Party Plaintiff Rule 37(a)(2)(B) Motion for Order Compelling the Plaintiff's Attendance at a Deposition Upon Oral Examination" dated October 23, 2003 as follows: "So, <u>Mr. Douglas cancelled the August 7 deposition.</u>" (emphasis ours)

Simply put, Bloom and the undersigned became tired of expending considerable time and money going through the preparation for Norman C. Bloom's deposition, each time, within the

---

[5] The previously agreed-to date for the deposition of John Volk finally taken on May 1, 2003, had to be rescheduled to accommodate Attorney Douglas's schedule as well. The deposition of Mark Errico and Steven Bloom scheduled for April 9 and 10, 2003 had to be postponed because of Attorney Douglas.

6

week prior to his deposition, only to have it repeatedly cancelled a few days prior to the agreed-to deposition day. (The undersigned expended substantial amounts of time preparing for Attorney Douglas's deposition each time it was scheduled, only to have to go through the same preparation a month or so later.)

Moreover, even though Bloom had complied with all outstanding discovery requests directed to Norman C. Bloom, counsel for Attorney Douglas additionally demanded that the third-party defendants Norman R. Bloom Revocable Trust, Norman R. Bloom Family Spray Trust, and Norman R. Bloom Irrevocable Insurance Trust respond to the interrogatories directed solely to the trusts themselves, prior to the taking of Norman C. Bloom's deposition on August 7, 2003. Since no Notice of Deposition had ever been served on the trusts, the undersigned did not believe that the two should be connected, but in order to get the deposition of Norman C. Bloom finished, nonetheless provided three sets of Interrogatory Responses for the trusts to Attorney Ciampa on August 4, 2003.

Absolutely no discovery responses remained outstanding as of August 4, 2003. Attorney Douglas, nonetheless, <u>personally</u> cancelled Bloom's deposition scheduled for August 7, 2003. (The face page of all discovery responses of Bloom are attached hereto as Exhibit 7)

Attorney Douglas's present counsel additionally claims that because it often took Norman C. Bloom or the third-party defendants Norman R. Bloom Revocable Trust, Norman R. Bloom Family Spray Trust, and Norman R. Bloom Irrevocable Insurance Trust more than 30 days to respond to the numerous discovery requests served by Attorney Douglas that they acted in bad faith. What counsel for Attorney Douglas fails to advise the Court of is that Attorney Douglas, himself, often needed more than 30 days to serve his responses. (See Exhibit 8)

Moreover, what Attorney Douglas's present counsel also fails to advise the Court is that <u>all such extensions had been agreed to by counsel for the parties</u>.

Moreover, we believe the truth of the matter is that Attorney Douglas repeatedly caused numerous depositions to be cancelled in order to cause Bloom to incur unnecessary legal expense. Why would Attorney Ciampa serve a Notice of Deposition on Norman C. Bloom on July 29, 2003 (See Exhibit 9), only to then cancel the deposition two days later, by letter dated July 31, 2003.

### ATTORNEY DOUGLAS'S CONTENTION THAT HE SHOULD NOT HAVE THE SANCTIONS REQUESTED IMPOSED BECAUSE BLOOM DID NOT FILE A MOTION TO COMPEL IS NOT SUPPORTED BY THE LAW

Attorney Douglas's contention that he is somehow protected from preclusion because Bloom did not file a motion to compel his attendance is meritless.

Here, Bloom filed two motions for an extension of time <u>specifically</u> for the purpose of deposing Attorney Douglas, so that his testimony was available for the Motion for Summary Judgment Bloom intended on filing. (See Docket Nos. 27 and 28)

Attorney Douglas claimed that business or medical obligations prevented him from attending his own deposition on a number of occasions; however, prior to the issuance of <u>all</u> Notices of Deposition for Attorney Douglas, approval for the specific dates was first obtained from Attorney Douglas. Why would Attorney Douglas agree to the date of October 15, 2003 and late September 2003, and then later allow his medical testing to be scheduled for the same date.

Equally telling is the fact that each time that Attorney Douglas cancelled his deposition, the new date proffered by Attorney Ciampa, after consultation with Attorney Douglas, was not days after the cancelled date, <u>but months</u>; i.e., May 7th to August 13th, then to August 12th; 2) August 12th to September 19th; 3) September 19th to October 15th; 4) October 15th to November

8

24th. In fact, this Court questioned why so much time was to transpire between each of Attorney Douglas's postponements. The answer, we believe, is either Attorney Douglas is a "V.I.P." or he, as we would submit, was stalling the taking of his deposition.

The Court itself recognized Attorney Douglas's unwarranted delaying tactics when it stated in its October 30, 2003 Order (Docket No. 29), as follows:

> The <u>casual approach</u> in scheduling Mr. Douglas's deposition does not comport with the reasonable requirement of moving this 1½ year old case to trial. <u>Why his availability as of November 7 warrants a delay to November 20 or 24 is not apparent</u>. (See Exhibit 10) (emphasis added)

## CONCLUSION

Based on the foregoing, and that presented in Bloom Motion In Limine, dated January 14, 2005 (Docket Nos. 101 and 102), the motion to preclude/strike should be granted by this Court.

Dated: Easton, Connecticut
February 18, 2005

LOVEJOY & ASSOCIATES
Attorneys for Plaintiff Norman C. Bloom and
Third-Party Defendants Norman R. Bloom
Revocable Trust, Norman R. Bloom Family Spray Trust, and Norman R. Bloom Irrevocable Insurance Trust

By: _____
Frederick A. Lovejoy (CT 03121)
P.O. Box 56
Easton, Connecticut 06612
(203) 459-9941
(203) 459-9943 (telefax)

DouglasReply.doc

9