UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X

NORMAN C. BLOOM,
                Plaintiff

                                          3:02CV907(PCD)

    v.

MICHAEL A. DOUGLAS,
                Defendant and Third
                Party Plaintiff

    v.

NORMAN C. BLOOM, NORMAN R.          March 2, 2005
BLOOM RECOVABLE TRUST,
NORMAN R. BLOOM FAMILY SPRAY TRUST
and NORMAN R. BLOOM IRREVOCABLE
INSURANCE TRUST
                Third Party Defendants

### ADDENDUM A
### PLAINTIFF AND THIRD-PARTY DEFENDANTS' RESPONSE TO DOUGLAS' SECTION A; I.E., PARAGRAPHS 1-6 OF PLAINTIFF/THIRD-PARTY DEFENDANTS' SECTION C

1) **CLAIMS OF FACT PROPOSED FOR STIPULATION**

    A) Michael A. Douglas has been licensed to practice law in the State of New York since 1967.

    *Agreed.*

    B) Douglas has never maintained an office in Connecticut.

    *Disagreed. Evidence will be offered that Michael A. Douglas, Esq. maintained plaintiff Norman C. Bloom's file in Connecticut. (Mark Errico) (Norman C. Bloom)*

    C) Douglas has never advertised legal services in Connecticut.

    *To the extent that this stipulation refers to written advertisements, plaintiff Norman C. Bloom agrees. To the extent that it refers to verbal solicitation,*

*plaintiff Norman C. Bloom disagrees. (Norman C. Bloom) (Mark Errico)*

D) Plaintiff Norman C. Bloom ("Norman Jr.") and Douglas became neighbors in December 1993 when Douglas moved to 1 Seaside Place, East Norwalk, Connecticut.

*Plaintiff is not aware of the exact date when Douglas moved to Seaside Place.*

E) Norman Jr.'s father, Norman R. Bloom ("Norman Sr.") died on October 22, 1989.

*Agrees.*

F) Norman Sr. was survived by his three sons, Norman Jr., Robert and Stephen.

*Agrees.*

G) Robert Bloom was appointed as executor to the Estate of Norman R. Bloom.

*Agrees that at some point Robert Bloom became executor.*

H) In 1995, Norman Jr. believed that his uncle, Hillard Bloom, a one-half owner of Tallmadge Brothers, Inc., was hiding income and assets of the estate of Norman R. Bloom.

*Disagrees. Norman C. Bloom was aware of all assets; however, because of conflicts in some reporting there was a question if all income had been reported. Additionally, any review of books and/or accounting was performed by professional auditors for which Bloom paid. (Norman C. Bloom) (Mark Errico)*

I) Norman Jr. also believed that Robert had failed to account for estate properties and failed to collect rental income to which the estate was entitled.

*Agrees.*

J) Norman Jr., through trusts set up for his benefit, was entitled to a one third-share

of this father's estate.

*Disagrees. Trust document speaks for itself.*

**K)** Douglas repeatedly informed Norman C. Bloom that he (Douglas) was not a Connecticut attorney and could not practice law in Connecticut.

*Disagrees. Douglas agreed to provide Norman C. Bloom with legal advice concerning all aspects of his father's estate and in respect to the corporations owned by the estate. However, Michael A. Douglas did advise Bloom that he could not appear in Court in Connecticut because he only was admitted in New York. (Norman C. Bloom) (Mark Errico)*

**L)** On June 19, 1995 the parties entered a binding contract entitled "Agreement."

*Agrees that on June 19, 1995 the parties entered into an agreement the terms of which speak for themselves. Bloom believed he was entering into a contract for legal services. Douglas alleges differently. (Norman C. Bloom) (Mark Errico) (Michael A. Douglas)*

**M)** On September 29, 1995, the parties executed an Amendment to the Agreement.

*Agrees.*

**N)** In January of 1997, the parties executed a Second Amendment to the Agreement. The Agreement dated June 19, 1995 specifically provides that Douglas is to act as a "consultant" and not an "attorney."

*Agrees that in January of 1997 the parties executed a "Second Amendment to Agreement"; however, disagrees with the remainder of the statement, as Douglas represented to Bloom that he would be providing legal advice. (Norman C. Bloom) (Mark Errico)*

**O)** On April 26, 1993, Norman C. Bloom retained Whitman and Ransom as his attorneys.

3

*Agrees.*

P) On March 27, 1996 Norman C. Bloom retained Connecticut attorneys Cohen and Wolf, P.C. to represent him in asserting his interest in his father's estate.

*Disagrees. On the advice of Michael A. Douglas, Norman C. Bloom retained Cohen & Wolf P.C. as his trial counsel so that the causes of action which Michael A. Douglas had recommended to Bloom could be commenced in Court. (Norman C. Bloom) (Mark Errico)*

Q) On December 22, 2000, Norman C. Bloom retained additional Connecticut counsel A. Reynolds Gordon to represent his interests.

*Disagrees. A. Reynold Gordon was retained at the suggestion of Douglas when Cohen & Wolf would not commence the legal actions that Douglas represented would be brought against his uncle and others; i.e., it was a second opinion. (Norman C. Bloom) (Mark Errico) (Reynold Gordon)*

R) The Divisive Reorganization agreement was signed by Norman C. Bloom on July 19, 2001 and bore an effective date of July 26, 2001.

*Agrees.*

S) Payment has been requested and denied.

*Agrees that Michael A. Douglas has demanded payment; however according to the terms of the argument said demand is premature. Additionally plaintiff believes that applicable law and the actions of Michael A. Douglas bar his right to seek such payments.*

2) **PROPOSED FINDINGS OF FACT (W/SOURCE)**

A) Michael A. Douglas is self-employed New York businessman.

i) **source**: Michael Douglas, Norman C. Bloom.

*Disagrees. Michael A. Douglas owns and operates a driving school. (Michael A.*

4

*Douglas) (Norman C. Bloom) (Mark Errico)*

**B)** Michael A. Douglas has earned his living over the past several decades pursuing various complex business ventures.

    **i)** **source**: Michael Douglas, Norman C. Bloom

*Disagrees. Michael A. Douglas' primary occupation has been his ownership and operation of a driving school in New York City. Prior to that, he was primarily employed as a high school teacher. (Michael A. Douglas) (Norman C. Bloom) (Mark Errico)*

**C)** Michael A. Douglas has been licensed to practice law in the State of New York since 1967.

    **i)** **source**: Michael Douglas

*Agrees.*

**D)** Other than the transaction upon which this litigation is based, Douglas has never done business in Connecticut.

    **i)** **source**: Michael Douglas

*Disagrees. Michael A. Douglas split a legal fee with the Law Office of Slavitt, Connery & Vandamis relating to a slip and fall case at a Stop & Shop. (Michael A. Douglas) (Norman C. Bloom).*

**E)** Douglas lived in Connecticut from December 1993 to December 1997.

    **i)** **Source**: Michael Douglas, Norman C. Bloom

*Plaintiff cannot agree or disagree.*

**F)** Douglas has never maintained an office in Connecticut.

    **i)** **Source**: Michael Douglas

*Disagrees. See Section 1(B) above.*

5

G) Douglas has never advertised legal services in Connecticut.
   i) **Source**: Michael Douglas

   *See Section 1(C) above.*

H) Plaintiff Norman C. Bloom ("Norman Jr.") and Douglas became neighbors in December 1993 when Douglas moved to 1 Seaside Place, East Norwalk, Connecticut.
   i) **source**: Michael Douglas, Norman C. Bloom

   *Bloom cannot agree or disagree.*

I) Norman Jr.'s father, Norman R. Bloom ("Norman Sr.") died on October 22, 1989.
   i) **source**: Michael Douglas, Norman C. Bloom, Stipulation

   *Agrees.*

J) Norman Sr. was survived by his three sons, Norman Jr., Robert and Stephen.
   i) **source**: Stipulation

   *Agrees.*

K) Norman Sr. left a substantial estate which included, among other things, real estate and a one-half interest in Tallmadge Brothers, Inc.
   i) **source**: Michael Douglas, Norman Bloom, Steven Bloom, Robert Bloom, Richard DiMarco. Exhibits: A, B, F, J, K, L, M, O, P, BN, BV, BW, CA, CJ, CK, CV, DF, DX, EM, ES.

   *Agrees.*

L) Norman Jr., through trusts set up for his benefit, was entitled to a one third-share

6

of this father's estate.

i) **source**: Michael Douglas, Norman Bloom, Richard DiMarco. Exhibits: J, K, L, M.

*Agrees that he is entitled to an interest in the aforementioned trusts subject to the terms and conditions stated in the trusts.*

**M)** Robert Bloom was appointed as executor to the Estate of Norman R. Bloom.

i) **source**: Stipulation. Exhibit: BN, BV, BW, CB, CK, CW.

*See Section 1(G).*

**N)** By June 1995 Norman Jr. was having trouble asserting the true value of his father's estate.

i) **source**: Michael Douglas, Norman C. Bloom, Mark Errico, Richard DiMarco, Richard Diviney. Exhibits: B.

*Disagrees. Norman C. Bloom knew the value of the estate and what assets it was comprised of; however, he was having difficulty obtaining control of the interests/assets he was entitled to. (Norman C. Bloom) (Mark Errico) (Richard DiMarco) (Richard Diviney) (Steven Bloom)*

**O)** Norman Jr. believed that his uncle, Hillard Bloom, a one-half owner of Tallmadge Brothers, Inc., was hiding income and assets of the estate of Norman R. Bloom.

i) **source**: same.

*See Section 1(H).*

**P)** Norman Jr. also believed that Robert had failed to account for estate properties and failed to collect rental income to which the estate was entitled.

i) **source**: Michael Douglas, Norman C. Bloom, Richard DiMarco. Exhibits: BE, BB, BH, BI, BR, BW, CB.

7

*Agrees.*

Q) In or about June 1995, Norman Jr. approached Xin Wong, Douglas' fiancee, and asked her to arrange a meeting between Norman Jr. and Douglas.
   i) **source**: Michael Douglas, Norman C. Bloom.

   *Bloom cannot agree or disagree.*

R) In June of 1995, Douglas agreed to meet with Norman C. Bloom on an informal basis.
   i) **source**: Michael Douglas, Norman C. Bloom.

   *Disagrees. All meetings were for the purpose of obtaining legal advice from Douglas. (Norman C. Bloom) (Mark Errico)*

S) Norman C. Bloom began to solicit Douglas' advice on a regular basis on issues related to the value of his father's estate.
   i) **source**: Michael Douglas, Norman C. Bloom.

   *Disagrees that Bloom requested that Douglas provide advice on the value of his father's estate. Bloom sought legal advice as to how to get control of his share of those assets. (Norman C. Bloom) (Mark Errico) (Deborah Bloom)*

T) Eventually, Douglas informed Norman C. Bloom that his issues were too time consuming. At that point, Norman C. Bloom offered to pay Douglas for his services.
   i) **source**: Michael Douglas, Norman C. Bloom.

   *Bloom cannot agree or disagree.*

U) Douglas repeatedly informed Norman C. Bloom that he (Douglas) was not a

8

Connecticut attorney and could not practice law in Connecticut.

   **i) source**: Michael Douglas, Norman C. Bloom, Richard DiMarco.

*Disagrees. While Michael A. Douglas had advised Norman C. Bloom he was not admitted in Connecticut, Michael A. Douglas at all times agreed to and provided Norman C. Bloom with legal advice in respect to the probating of his father's estate et cetera. (Norman C. Bloom) (Mark Errico) (Deborah Bloom) (Steven Bloom) (Robert Bloom) (Terry Backer) (Christine Barker) (Mario Zangari) (Richard Diviney) (Reynolds Gordon)*

**V)** Douglas additionally informed Norman C. Bloom that he would need to retain Connecticut counsel to pursue his claim and provide legal advice on issues arising under Connecticut law.

   **i) source**: Michael Douglas, Norman C. Bloom, Richard DiMarco.

*Disagrees. Douglas advised Bloom that he would need Cohen & Wolf to act as trial counsel; i.e., appear in court. Douglas was to provide legal advice to Bloom. (Norman C. Bloom) (Mark Errico)*

**W)** On June 19, 1995 the parties entered a binding contract entitled "Agreement."

   **i) source**: Michael Douglas, Norman C. Bloom. Exhibit AP.

*Agrees that an agreement was entered into in which he understood Douglas was to provide to him legal services/advice. (Norman C. Bloom) (Mark Errico)*

**X)** On September 29, 1995, the parties executed an Amendment to Agreement.

   **i) source**: Michael Douglas, Norman C. Bloom. Exhibit: AX.

*Agrees.*

**Y)** In January of 1997, the parties executed Second Amendment to the Agreement.

   **i) source**: Michael Douglas, Norman C. Bloom. Exhibit BK.

*Agrees.*

9

**Z)** In 2000, Michael A. Douglas submitted a Third Amended Agreement for signature by Norman C. Bloom and Paul Zill, co-trustees for the Norman R. Bloom trusts established for the benefit of Norman C. Bloom ("Bloom Trusts").

  **i) source**: Michael Douglas, Norman C. Bloom, Paul Zill, Richard DiMarco. Exhibit D.

*Agrees. However, Norman C. Bloom and Paul Zill refused to execute the said document. (Norman C. Bloom) (Paul Zill) (Mark Errico)*

**AA)** Norman C. Bloom and Co-trustees for the Bloom Trusts, knowing the terms of said Agreement, as Amended, continued to encourage and accept Douglas' performance.

  **i) source**: Michael Douglas, Norman C. Bloom, Paul Zill, Richard DiMarco.

*Disagrees. Bloom and Zill refused to sign the agreement as Bloom had retained Douglas to provide him with legal advice.*

**AB)** Pursuant to the Agreement, as amended, Michael Douglas was to serve as a consultant to Norman Bloom for the purpose of asserting the true value of his share of his father's estate.

  **i) source**: Michael Douglas, Norman C. Bloom. Exhibits AP, AX, BK, D.

*Disagrees. Bloom knew the approximate value of his father's estate and what assets it was comprised of. Douglas was retained to provide legal advice as to how to obtain his rightful share of the same. (Norman C. Bloom) (Mark Errico) (Deborah Bloom) (Steven Bloom)*

**AC)** For his services, Douglas was to be paid $200 per hour.

  **i) source:** Same.

*Disagrees. Douglas was to be paid $200.00 per hour for legal advice. (Norman*

10

*C. Bloom) (Mark Errico)*

**AD)** In addition, Douglas was to receive a sliding scale percentage based on the ultimate value of Norman C. Bloom's one-third share of his father's estate.

   **i) source:** Same

*Disagree. Douglas was to receive additional compensation based on the death date value of Bloom's father's estate if his legal advice obtained the assets to which Bloom was entitled, and the persons which had refused to provide the assets were sued. (Norman C. Bloom) (Mark Errico)*

**AE)** The Agreement dated June 19, 1995 specifically provides that Douglas is to act as a "consultant" and not an "attorney."

   **i) source:** Same.

*Disagrees. The agreement states that Douglas was to provide legal advice with respect to the issues listed. Douglas at all times represented to Bloom that he was providing legal advice. (Norman C. Bloom) (Mark Errico) (Deborah Bloom) Additionally, Douglas represented to others that he was Bloom's lawyer. (Mark Errico) (Mario Zangari) (Christine Barker) (Michael Lyons) (Reynolds Gordon) (Richard Deviney) (Steven Bloom) (Robert Bloom) (Terry Backer)*

**AF)** On April 26, 1993, Norman C. Bloom retained Whitman and Ransom as his attorneys.

   **i) source:** Norman C. Bloom. Exhibits W, Y, Z, AB, AC, AD.

*Agrees.*

**AG)** In June of 1995, Norman C. Bloom relied on attorney Richard Deviney, attorney for co-trustee Westport Bank and Trust Co. to represent his interest and provide legal advice.

   **i) source:** Norman C. Bloom, Michael Douglas, Mark Errico. Exhibits AO, AR, AS, AU, AV, AY, BB.

11

*Disagrees. Diviney represented the trustee Westport Bank & Trust Co. Bloom hired Douglas to provide him with legal advice. Douglas had no contact with Attorney Diviney from June 1995 to March 1996. (Norman C. Bloom) (Mark Errico)*

**AH)**    On March 27, 1996 Norman C. Bloom retained Connecticut attorneys Cohen and Wolf, P.C. to represent him in asserting his interest in his father's estate.

   **i) source:** Michael Douglas, Norman C. Bloom, Richard DiMarco. Exhibit BD.

*Disagrees. Bloom retained Cohen & Wolf to act as trial counsel because Douglas had advised he could not appear in Court in Connecticut. (Norman C. Bloom) (Mark Errico)*

**AI)**    On December 22, 2000, Norman C. Bloom retained additional Connecticut counsel A. Reynolds Gordon to represent his interests.

   **i) source:** Michael Douglas, Norman C. Bloom, Richard DiMarco, A. Reynolds Gordon. Exhibit EO.

*Disagrees. Bloom consulted A. Reynolds Gordon on the issue of the validity of bringing claims against Hillard Bloom, et cetera, because the counsel Douglas had obtained for Bloom to bring such an action would not. (Norman C. Bloom) (Mark Errico) (Reynolds Gordon)*

**AJ)**    At all relevant times, Norman C. Bloom relied upon Connecticut counsel for all issues arising under Connecticut law.

   **i) source:** Michael Douglas, Richard Diviney, Richard DiMarco, Richard Albrecht, Reynolds Gordon.

*Disagrees. At all times Bloom relied on Douglas for legal advice. Connecticut counsel was to provide the trial aspects of the legal representation. (Norman C. Bloom) (Mark Errico) (Steven Bloom)*

**AK)**    Connecticut counsel drafted all pleadings, performed all legal research,

12

and made all appearances in Connecticut courts on Norman C. Bloom's behalf.

**i) source:** Michael Douglas, Richard Diviney, Richard DiMarco, Richard Albrecht, Reynolds Gordon, Paul Pacifico, Richard Zeisler, Michael Lyons.

*Bloom cannot agree or disagree.*

**AL)** Douglas' dutifully performed his responsibilities under the agreement, as amended.

**i) source:** Michael Douglas, Norman C. Bloom, Richard DiMarco, Richard Albrecht, Paul Pacifico, Richard Zeisler, Robert Bloom, Stephen Bloom, Frederick Lovejoy, Mark Errico, Paul Zill, Mario Zangari, Christine Barker, Richard Worth, Linda Simmons, Gregory Bezz. All exhibits authored by Michael Douglas.

*Disagrees. Douglas quit prior to completing his mission. Others apparently performed some or all of the items Douglas was to perform. Douglas did not obtain the results that he represented he would. (Douglas C. Bloom) (Mark Errico) (Steven Bloom) (Robert Bloom) (Mario Zangari) (Christine Barker) (Michael Lyons) (Reynolds Gordon) (Richard Diviney)*

**AM)** Douglas' consulting work related primarily to the business aspects of the case. Among other things, this work involved locating the assets of the estate, and securing their value.

**i) source:** Michael Douglas, Norman C. Bloom, Mark Errico, Richard DiMarco, Richard Albrecht, Reynolds Gordon, Paul Pacifico, Richard Zeisler, Joseph Tessoriere, Lawrence Lapine, Michael Lyons, Robert Bloom, Stephen Bloom. All exhibits authored by Michael Douglas.

*Disagrees. Bloom knew of the assets and their value. Douglas was hired to provide legal advice so that control of the assets could be obtained and those who refused to provide those assets to Bloom could be prosecuted.*

**AN)** Douglas' work also involved assisting in creating and negotiating the

13

Divisive Reorganization agreement, which effectively divided the assets of Tallmadge Bothers, Inc. between the heirs of Norman R. Bloom and Hilliard Bloom.

**i) source:** same.

*Agrees that Douglas among others created and negotiated the Divisive Reorganization Agreement.*

**AO)**   Douglas' work was done under the supervision and direction of Norman C. Bloom's Connecticut attorneys.

**i) source:** Michael Douglas, Norman C. Bloom, Richard DiMarco, Richard Albrecht, Reynolds Gordon, Frederick Lovejoy.

*Disagrees. (Norman C. Bloom) (Mark Errico) (Steven Bloom) Robert Bloom) (Mario Zangari) (Christine Barker) (Michael Lyons) (Reynolds Gordon) (Richard Diviney)*

**AP)**   Douglas' work was done primarily from his office in New York.

**i) source:** Michael Douglas, Richard DiMarco, Richard Albrecht, Reynolds Gordon, Paul Pacifico, Richard Zeisler. All exhibits authored by Douglas.

*Disagrees. All meetings and contracts were negotiated in Connecticut. To the extent that Douglas did work in New York, he communicated with persons in Connecticut, and all of his work was presented or used in Connecticut. (Norman C. Bloom) (Mark Errico) (Christine Barker) (Michael Lyons) (Reynolds Gordon) (Richard Diviney) (Steven Bloom) (Robert Bloom) (Professor Dennis Curtis)*

**AP-2)**   The Estate of Norman R. Bloom settled in February of 2001.

**i) source:** Michael Douglas, Richard DiMarco. Exhibit ES.

*Agrees that a portion of the Estate of Norman R. Bloom settled in February 2001. There, however, remained additional aspects which were required be resolved. (Norman C. Bloom) (Robert Bloom) (Steven Bloom) (Mario Zangari) (Christine Barker) (Reynolds Gordon) (Richard DiMarco) (Richard Diviney)*

14

**AQ)**   Following the Settlement of the estate, Norman C. Bloom and the Bloom Trusts continued to request Douglas' participation in negotiating a *de facto* division of Tallmadge Brothers, Inc. between the heirs of Norman R. Bloom and the Heirs of Hilliard Bloom.

   **i) source:**  Michael Douglas, Norman C. Bloom, Richard DiMarco.

*Disagrees. Bloom did not make a request such as that stated herein. (Norman C. Bloom) (Mark Errico)*

**AR)**   The Divisive Reorganization agreement was signed by Norman C. Bloom on July 19, 2001 and bore an effective date of July 26, 2001.

   **i) source:** Exhibit FN.

*Agrees.*

**AS)**   Following the Divisive Reorganization Agreement, Norman C. Bloom and his new Attorney Frederick Lovejoy continued to request and accept Douglas' services.

   **i) source:**  Michael Douglas, Norman C. Bloom, Frederick Lovejoy.

*Disagrees. (Norman C. Bloom) (Mark Errico)*

**AT)**   At the time Norman R. Bloom's estate settled, Norman C. Bloom's one third share of his father's estate was worth approximately $9,000,000.00.

   **i) source:**  Michael Douglas, Norman C. Bloom, Richard DiMarco, Robert Bloom, Stephen Bloom, Joseph Tesoriere, Richard Zeisler, David Carey, James Sullivan, William Cibes, Melanie Atwater, John Volk. Exhibits A, B, C, F, I, J, K, L, M, N, O, P, AN, AY, AZ, BB, BN, BR, BU, BV, BW, CB, CK, CN, CU, CV, CW, DN, DX, DY, EA, EH, EL, EM, EP, EQ, ES, EW, FN, GD.

15