*Disagrees. (Norman C. Bloom) (Mark Errico) (Mario Zangari) (Christine Barker) (Michael Lyons) (Steven Bloom) (Robert Bloom)*

**AU)** Based on the Agreement, as amended, Douglas is due a percentage fee of approximately $300,000.00.

**i) source:** Exhibit AP.

*Disagrees. Douglas failed to complete his duties but instead quit. Some of the duties were accomplished by others. Additionally, should any amount be owed, the amounts were to be based on the death date values. Finally, Douglas previously claimed that he was only owed $120,000.00 pursuant to this clause. Thus he should be estopped from claiming a greater amount at this time. (Norman C. Bloom) (Mark Errico) (Mario Zangari) (Christine Barker) (Michael Lyons) (Richard DiMarco) (Reynolds Gordon) (Michael A. Douglas) (Robert Bloom) (Steven Bloom)*

**AV)** Also based on the Agreement, as amended, Douglas is owed approximately $200,000 in unpaid hourly billing.

**i) source:** Exhibits AP, AT, BA, BS.

*Disagree. Douglas quit prior to completing his duties. Others ended up performing a majority of his duties. Douglas, although he submitted monthly or yearly statements of his time, had stated that all his billings would be subject to confirmation/review when all work had been accomplished. Additionally, it appears that Douglas overbilled for his time. Douglas may not collect any fee if he engaged in the unauthorized practice of law in Connecticut. (Norman C. Bloom) (Mark Errico) (Mario Zangari) (Christine Barker) (Professor Dennis Curtis)*

**AW)** Payment has been requested and denied.

**i) source:** Michael A. Douglas.

*Disagree. Payment was prematurely requested. Additionally, Norman C. Bloom commenced this declaratory judgment action to determine what, if anything, is owed.*

### 3) CLAIMS OF LAW (W/AUTHORITY)

**A) The parties entered into a binding Agreement.**

16

i) **Absent countervailing policy reasons, parties are bound by their contracts.**

(1) In re Wild Bills, 206 B.R. 8 (Bankr.D.Conn. 1997).

*Disagrees. Douglas' representations were negligent,* D'Nisse-Cupo v. Board of Directors of Notre Dame High School, *2002 Conn. 206 1987 and fraudulent,* Miller v. Appleby *183 Conn. 51 (1981);* Paiva v. Vanech *159 Conn. 512 (1970) and they abrogate the argument.* Newton v. Rummery, *480 U.S. 386, 392 (1987) ("a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement");* Commercial Union Ins. Co. v. Lines, *378 F.3d 204, 209 (2d Cir., 2004) (there is a general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act);* 3M v. Francavilla, *191 F. Supp. 2d 270, 278 (D. Conn., 2002) (It is the general rule that competent persons have the utmost liberty of contracting and their agreements, voluntarily and fairly made, shall be held valid and enforced in the courts. However, it has long been the law that if the contract contemplates acts against public policy, or is forbidden by statute, it is inoperative.);* Wheelabrator Environmental. Syst. v. Galante, *136 F. Supp. 2d 21, 30 (D. Conn. 2001) ("It is well established that contracts that violate public policy are unenforceable...No court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law.");* Solomon v. Gilmore, *248 Conn. 769, 774 (Conn. 1999) ("It is well established that contracts that violate public policy are unenforceable.")*

17

ii) **Court must enforce contract as drafted by parties and may not relieve contracting party from anticipated or actual difficulties undertaken pursuant to contract, unless contract is voidable on grounds such as mistake, fraud, or unconscionability.**

(1) Gibson v. Capano, 241 Conn. 726 (1997).

*Agree that enforcement will be barred if contract is voidable on grounds such as mistake, fraud or unconsionability.* Holly Hill Holdings v. Lowman, 226 Conn. 748, 755-56 (1993) *(in private disputes, if the contract is voidable on grounds such as mistake, fraud or unconscionability, a court will not enforce the contract as drafted by the parties and will relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract). Mutual mistake may make a contract unenforceable.* Alden Auto Parts Warehouse Inc. v. Dolphin Equip. Leasing Corp., 692 F.2d 330, 333 (2d Cir. 1982) *(a contract entered into because of a mutual mistake of material fact will generally be avoidable);* Healy v. Rich Prods. Corp., 981 F.2d 68, 73 (2d Cir. 1992) *("a 'mutual mistake' occurs when 'both... parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent'");* Wheelabrator Envtl. Sys. v. Galante, 136 F. Supp. 2d 21, 32-33 (D. Conn. 2001) *("Rescission of a contract on the ground of mutual mistake may be granted in a proper case where the mistake is common to both parties and by reason of it each has done what neither intended. Whether there has been such mistake is a question of fact. To justify rescission of a contract, however, a mistake must be of an existing or past fact. Mistakes in predicting the future, understandably, cannot form the basis for rescinding a contract. A party's prediction or judgment as to events to*

*occur in the future, even if erroneous, is not a mistake as that word is defined under the doctrine of mutual mistake." internal quotation marks omitted). Unilateral mistake may also make a contract unenforceable.* <u>Koam Produce, Inc. v. DiMare Homestead, Inc.</u>, 329 F.3d 123, 127 (2d Cir. 2003) *(A mistake is a belief that is not in accord with the facts. Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake and: (a) the effect of the mistake is such that enforcement of the contract would be unconscionable; or (b) the other party had reason to know of the mistake or his fault caused the mistake.) Fraud or misrepresentation may also make the contract unenforceable.* <u>Staten Island Hygeia Ice & Cold Storage Co. v. United States</u>, 85 F.2d 68 (2d Cir. 1936) *("Between private parties it seems to be well established that equitable relief may be had where a mistake as to the plaintiff's legal rights is induced by misrepresentations, even though innocently made, if it is reasonable for the plaintiff to rely upon the presumably greater knowledge of the defendant.").*

iii) **Contracting parties must accept outcome of their bargain; they cannot rely on court to rescue them from decisions they may later regret.**

   (1) <u>Yellow Page Consultants, Inc. v. Omni Home Health Services, Inc.</u>, 54 Conn. App. 194 (2000)

   *Disagrees; the court's powers of equity exist precisely to rescue the parties if the transaction was founded on fraud, misrepresentation, illegality, unconscionability or mistake.* <u>Phalen v. Clark</u>, 19 Conn. 421, 433-34 (1849) *(A court of equity has undoubted jurisdiction to relieve against every species of fraud. Fraud and damage, coupled together, will entitle the injured party to*

19

*relief, in any court of justice.);* Union Pacific R.R. Co. v. Chicago, Rock Isl. & Pacific R.R. Co, 163 U.S. 564, 600-601 (1896) *("It must not be forgotten that in the increasing complexities of modern business relations equitable remedies have necessarily and steadily been expanded, and no inflexible rule has been permitted to circumscribe them.")*

iv) **Parties are bound to the terms of a contract, though they do not sign it, if, knowing it's terms, they accept its benefits.**
  (1) Schwarzschild v. Martin, 191 Conn. 316, 321, 464 A.2d 774 (1983).
  (2) Dornemann v. Dornemann, 48 Conn. Supp. 502 (2004)
  (3) Ferraro v. Christina, 1994 WL 271830 (Conn. Super. June 13, 1994).
  (4) Mozzochi v. Luchs, 35 Conn. Supp. 19, 23 (1977).
  (5) 17 Am. Jur.2d Contracts §70 (2004).
  *Disagrees.*

B) **In the absence of a valid written agreement, Douglas is entitled to recover in Quantum Meruit for the reasonable value of his services.**
  i) **Quantum meruit is theory of contract recovery that does not depend upon existence of contract, either express or implied in fact; rather, quantum meruit arises out of need to avoid unjust enrichment to party, even in absence of actual agreement.**
    (1) Gagne v. Vaccaro, 255 Conn. 390 (2001)
    *Disagrees. Douglas may not recover in quantum meruit if he cannot prove the work he performed or its value.* St. Onge et al v. Media Group Inc., 84 Conn. App. 88 (2004). See also Perlah v. S.E.I. Corp., 29 Conn. App. 43, 47 (Conn. App. Ct. 1992) *(quantum meruit is unavailable as a theory of recovery in Connecticut to an attorney who has engaged in the unauthorized practice of*

20

*law)*; Taft v. Amsel, 23 Conn. Supp. 225, 228 (Conn. Super. Ct., Jud. Dist. Fairfield Co., at Bridgeport, 1962) *(same)*; Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 748 n.1 (1947) *(general rule is that a transaction wholly illegal will not support suit in quantum meruit)*; Stephen Chiulli v. Nancy Zola, 2004 Conn. Super. LEXIS 2120, at *4-5, No. CV030194728 (unreported) (Conn. Super. Ct., Jud. Dist. of Stamford-Norwalk, at Stamford 2004) *(a contractor who fails to comply with the Connecticut Home Improvement Act is prohibited from recovery under either a breach of contract claim or quasi-contractual methods of recovery, such as unjust enrichment or quantum meruit)*; Mazza Consulting Group v. M&O Constr. Co., 1998 Conn. Super. LEXIS 1155, at *6, CV 980163656S, (unreported) (Conn. Super. Ct., Jud. Dist. Stamford-Norwalk, at Stamford, 1998) *(Unlicensed professional engineer could not recover in quantum meruit because the services he was performing were illegal)*.

ii) **Under Connecticut law, the plaintiff may prevail on an implied contract theory by demonstrating that it performed services at the request of the opposing party and in expectation that compensation would be made for them.**

    (1) Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736 (1998), aff'd 269 F.3d 114 (1999).

*Disagrees.*

iii) **"Quantum meruit" allows for restitution in situations in which no express contract was made.**

    (1) General Elec. Capital Corp. v. DirecTV, Inc., 94 F. Supp 2d 190 (D. Conn. 1999).

21

*Disagrees. Douglas may not recover in quantum meruit as an alternative basis when engaging in the unauthorized practice of law.* Taft v. Ansel 23 Conn. Supp. 225 (1962); St. Onge v. Media Group Inc. 84 Conn. App. 88 (2004).

iv) **Existence of enforceable contract is not a necessary precondition to recovery under either quantum meruit or promissory estoppel doctrines.**
(1) C.R. Klewin, Inc. v. Flagship Properties, Inc., 955 F.2d. 5 (2nd Cir. 1992).

C) **Douglas' services did not constitute the practice of law.**
   i) Testimony of Sid Miller, if deemed admissible.
   ii) Conn. Gen. Stat. § 51-88.
   iii) Statewide Grievance Committee v. Patton, 239 Conn. 251, 683 A.2d 1359 (1996).
   iv) State Bar Assn. v. Connecticut Bank & Trust Co., 145 Conn. 222, 140 A.2d 863 (1958).
   v) Grievance Committee v. Payne, 128 Conn. 325, 22 A.2d 623 (1941).
   vi) State Bar Ass'n v. Connecticut Bank & Trust Co., 145 Conn. 222, 140 A.2d 863 (1958).
   vii) In re Darlene C., 247 Conn. 1, 717 A.2d 1242 (1998).

*Disagree. Plaintiff's Expert Witness, (Professor Curtis) (Norman C. Bloom) (Mark Errico) (Mario Zangari) (Christine Barker) (Michael Lyons) (Richard Diviney) (Terry Backer) (Reynolds Gordon)* State Bar Association of Connecticut v. the Connecticut Bank and Trust Company, 145 Conn. 222, 234-35, 140 A.2d 863 (1988); Perlah v. SEI Corp., 29 Conn. App. 43 (1992); Taft v. Ansel, 23 Conn. Supp. 225 (1962)

22

D) **Even if Douglas practiced law, his services were compensable since he disclosed his out-of-state status and associated with local counsel.**
   i) 11 A.L.R.3d 907 (2004).
   ii) 7 Am. Jur. Attorneys at Law §259 (2003).
   iii) ABA Committee on Ethics and Professional Responsibility, Formal Op. 316 (1967).
   iv) Winer v. Jonal Corporation, 169 Mont. 247, 545 P.2d 1094 (1976).
   v) Brooks v. Volunteer Harbor No. 4, 233 Mass. 168, 123 N.E. 511 (1919).
   vi) Lindsey v. Ogden, 10 Mass. App. Ct. 142, 406 N.E.2d 701 (1980).
   vii) Somuah v. Flachs, 352 Md. 241, 721 A.2d 680 (1998).
   viii) ABA Model Rules of Professional Conduct.
   ix) Freeling v. Tucker, 49 Idaho 475, 289 P.85 (1930).
   x) Dietrich Corp. v. King Resources Co., 596 F.2d 422 (10th Cir. 1979).

   *Disagrees. Douglas has not asserted a claim for performance of legal services and, as such, is precluded/barred from belatedly asserting such a claim. Disclosure of his out of state status or associating with local counsel does not ameliorate his unauthorized practice of law in Connecticut. (Professor Curtis)* Servidone Construction Corp. v. St. Paul Fire & Marine Insurance Company and First National Association, 911 F.Supp. 560 (N.D.N.Y. 1995)

E) **Any services deemed the practice of law which were performed in New York are compensable.**
   i) Estate of Waring, 221 A.2d 193 (N.J. 1966).
   ii) ABA Committee on Ethics and Professional Responsibility, Formal Op. 316 (1967).
   iii) Restatement (3rd) The Law Governing Lawyers § 3 cmt. (2001).
   iv) Kellett v. Dolin, 1999 WL 814364 (D. N.H. May 28, 1999).

    **v)** El Genayel v. Seaman, 533 N.E.2d 245 (N.Y. 1988).

    **vi)** Lindsey v. Ogden, 10 Mass App. Ct. 142 (1980).

    **vii)** Lamb v. Jones, 202 So.2d 810 (Fla. Dist. Ct. App. 1967).

    **viii)** Fought & Co. v. Steel Eng'g and Erecting, Inc., 951 P.2d 487 (Haw. 1998).

*Disagree. Douglas is precluded/barred from claiming reimbursement for legal services because he denied performing any and has made no claim for failure to pay for legal services. Moreover, all services were performed in Connecticut or meant to have an effect in the State of Connecticut. Additionally, Bloom believes that even if Douglas performed some service in New York, all of his services were for the purpose of effecting Connecticut persons, corporations and/or court actions, and as such constitutes the unauthorized practice of law in Connecticut.*

Tust v. Amsel 23 Conn. Supp. 225 (1962), Biller Associates v. Rte 156 Reality Company, 52 Conn. App. 18, 725 A2d 398 (App. CT 1999)

**F) Plaintiff and Third Party Defendants are Estopped from asserting Unauthorized Practice of Law against Douglas since at all times Bloom, the Bloom Trusts, and their attorneys knew that Douglas was not licensed to practice law in Connecticut and nonetheless encouraged his services.**

    i) 2284 Corporation v. Shiffrin, 98 F.Supp. 2d 65 (D.Conn. 2000)

    ii) Doe v. Doe, 244 Conn. 403 (1998).

    iii) Jamesbury Corp. v. Litton Indus. Products, 427 F.Supp. 756 (D.Conn. 1977).

*Douglas is barred from asserting estoppel principles as they were not pleaded in his answer and thus is barred from asserting the same at this time. Additionally, Bloom as a layperson was not aware that Douglas' providing legal advice in Connecticut is illegal.*

**G) Even if some of Douglas' services are deemed to be unauthorized practice of law, he is entitled to recover for compensable services.**

i)  Perlah v. SEI Corporation, 29 Conn. App. 43, 612 A.2d 806 (1992).

*Disagree. Douglas has not asserted a claim for legal services and is therefore barred for doing so at this late date. In fact, Douglas has contended that he provided no legal services whatsoever. Additionally, all of the legal services Douglas performed occurred in the State of Connecticut or had an effect therein and as such he may not recover for the same. See Section 3(C) above.*

Tust v. Amsel 23 Conn. Supp. 225 (1962), Biller Associates v. Rte 156 Reality Company, 52 Conn. App. 18, 725 A2d 398 (App. CT 1999)

## 4) PROPOSED EXHIBITS (DEFENDANT'S LETTERED)

**A)** Douglas Summary of Assets and Value of Estate of Norman R. Bloom

*Object. Never produced by defendant and as such should be barred as evidence in this matter.*

**B)** Summary of Case Created by Norman C./Mark Errico

*No objection.*

**C)** Casefile from Tallmadge Brothers v. Bridgeport Redevelopment, et. al. FBT CV-00-0372616

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**D)** Third Amended Agreement

*No objection.*

**E)** Douglas correspondence to Joseph Tessoriere (date unknown)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**F)** Shareholder's agreement between heirs of NRB

*Objection: Relevance.*

25

**G)** Lafayette American Bank Records

*No objection.*

**H)** Typed Version of Handwritten Time Summaries

*No objection.*

**I)** Oyster & Hard Clam Market Statistics from DOA Website

*Objection: Relevance.*

**J)** Will of Norman R. Bloom

*Objection: Relevance.*

**K)** Revocable Trust Indenture

*Objection: Relevance.*

**L)** Norman R. Bloom Irrevocable Ins. Trust Indenture

*Objection: Relevance.*

**M)** Norman R. Bloom Family Spray Trust

*Objection: Relevance.*

**N)** 1989 Balance Sheets of Tallmadge Businesses

*Objection: Relevance.*

**O)** Appraisals of Real Property in Estate of Norman R. Bloom

*Objection: Relevance.*

**P)** Shellfish Surveys 1991 – 1995

*Objection: Relevance.*

**Q)** DiSarbo correspondence to Robert Bloom (1/23/91)

*No objection.*

**R)** Errico correspondence to Holub (7/31/92)

*Objection: Relevance.*

**S)** Errico correspondence to Reichert (8/3/92)

*Objection: Relevance.*

**T)** DeSarbo correspondence to Norman C. Bloom (8/21/92)

*No objection.*

**U)** Coates correspondence to DeSarbo 2/09/1993

*Objection: Relevance.*

**V)** Coates correspondence to Norman C (4/26/93)

*Objection: Relevance.*

**W)** Whitman & Ransom Retainer (4/26/93)

*Objection: Relevance.*

**X)** Norman C. Bloom correspondence to Robert Bloom (5/7/93)

*Objection: Relevance.*

**Y)** Coates correspondence to Reichert (12/13/93)

*Objection: Relevance.*

**Z)** Coates correspondence to Richichi (2/1/94)

*Objection: Relevance.*

**AA)** Slavitt correspondence to Desarbo (3/2/94)

*No objection.*

**AB)** Coates correspondence to Reichert (3/9/94)

*Objection: Relevance.*

**AC)** Coates correspondence to Hilliard E. Bloom (3/9/94)

*Objection: Relevance.*

**AD)** Coates correspondence to Westport Bank & Trust Co. (3/9/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AE)** Slavitt correspondence to Richichi (3/23/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AF)** Slavitt correspondence to Richichi (3/31/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AG)** Bloom correspondence to Connecticut Secretary of State (4/11/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AH)** Bloom correspondence to Connecticut Secretary of State (4/11/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AI)** Coates correspondence to Reichert (4/21/94)

*Objection: Relevance.*

**AJ)** Slavitt correspondence to Norman C (8/29/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AK)** Slavitt correspondence to Norman C (9/13/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AL)** Slavitt correspondence to Norman C (9/26/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AM)** Slavitt correspondence to Richichi (10/3/94)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AN)** Aquaculture Report (1/4/95)

*Objection: Relevance.*

**AO)** Diviney correspondence to DeSarbo 4/4/1995

*Objection: Relevance.*

**AP)** Agreement (6/19/95)

*No objection.*

29

**AQ)** Questions for Murphy drafted by Douglas (**7/??/95**)

*No objection.*

**AR)** Errico correspondence to Gallagher(7/19/95)

*Objection: Relevance.*

**AS)** Errico correspondence to Diviney (7/19/95)

*Objection: Relevance.*

**AT)** Douglas Time Records Signed by Norman Bloom

*Objection: Relevance.*

**AU)** Gallagher correspondence to Reichert (8/1/95)

*Objection: Relevance.*

**AV)** Errico correspondence to Gallagher (9/8/95)

*Objection: Relevance.*

**AW)** Errico correspondence to Murphy (9/22/95)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**AX)** Amendment to Agreement (9/29/95)

*No objection.*

**AY)** Norman C correspondence to Diviney (10/10/95)

*Objection: Relevance.*

30

**AZ)** Cadre correspondence to Douglas (10/24/95)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**BA)** Bill submitted by Douglas to Bloom for $10,000

*No objection.*

**BB)** Diviney Draft Summary (2/5/96)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**BC)** Douglas correspondence to DiMarco (3/14/96)

*No objection.*

**BD)** Cohen&Wolf Retainer Agreement (3/27/96)

*No objection.*

**BE)** Diviney correspondence to DiMarco (4/10/96)

*Objection: Relevance.*

**BF)** DeSarbo correspondence to DiMarco (5/28/1996)

*Objection: Relevance.*

**BG)** Desarbo correspondence to DiMarco (8/27/96)

*Objection: Relevance.*

**BH)** Objection to Final Accounting (9/4/96)

*Objection: Relevance.*

31

**BI)**  Diviney correspondence to Albrecht(9/6/96)

*Objection: Relevance, never disclosed or produced by Michael A. Douglas.*

**BJ)**  Douglas' Suggested Questions for Robert Bloom (12/?/96)

*No objection.*

**BK)**  Second Amendment to Agreement (1/??/97)

*No objection.*

**BL)**  DiMarco correspondence to Lamere (1/3/97)

*Objection: Relevance.*

**BM)**  Draft Complaint (7/10/97)

*Objection: Relevance.*

**BN)**  Inventory of Estate of Norman R. Bloom (7/17/97)

*Objection: Relevance.*

**BO)**  Douglas correspondence to DiMarco (8/12/97)

*No objection.*

**BP)**  Douglas correspondence to DiMarco(8/20/97)

*No objection.*

**BQ)**  Douglas correspondence to DiMarco (9/4/97)

*No objection.*