**EXHIBIT C**

## **PROPOSED JURY INSTRUCTIONS**

### **Breach of Contract**

The defendant, Michael Douglas, claims that he entered into a contract with the plaintiff Norman Bloom, and the three trusts set up for the benefit of plaintiff Norman Bloom (the Norman R. Bloom Family Spray Trust, Norman R. Bloom Irrevocable Insurance Trust, and Norman R. Bloom Revocable Trust). A contract is an enforceable agreement. The general rule is that parties are bound by the contracts to which they agree. Contracting parties must accept outcome of their bargain; they cannot rely on the court to rescue them from decisions they may later regret.

Here, there is an express contract alleged, meaning one that has been reduced to writing or expressed orally. The parties are in agreement Michael Douglas and Norman Bloom entered the Agreement dated June 19, 1995. They are also in agreement that both agreed to the first Amendment to the Agreement dated September 29, 1995. They are also in agreement that both parties executed the Second Amendment to the Agreement dated January of 1997.

### Authority

Boland v. Catalano, 202 Conn. 333, 338-39 (1987); Skelly v. Bristol Savings Bank, 63 Conn. 83, 87 (1893); Atlas v. Miller, 20 Conn. App. 680, 683 (1990); Hale v. Benvenuti, Inc., 38 Conn. Sup. 634, 638-39 (1983); In re Wild Bills, 206 B.R. 8 (D. Conn. 1997); Yellow Page Consultants, Inc. v. Omni Home Health Services, Inc., 54 Conn. App. 194 (2000); 1 Restatement (Second), Contracts §§ 1,4.

## Third Amended Agreement

As you know from the testimony, there is a dispute as to whether the parties agreed to the Third Amended Agreement. Michael Douglas has contends that on several occasions he gave the Third Amended Agreement to plaintiff Norman Bloom, and Paul Zill who was trustee for the Bloom Trusts. He further contends that although he never received a signed copy, they verbally indicated their assent to its terms. He further contends that knowing full well the terms of the Third Amended Agreement, they permitted him to keep working for them under the impression that the Agreement would be honored.

Plaintiff Norman Bloom and the Bloom Trusts contend that they never received the Third Amended Agreement.

In order to find that the parties are bound by the Third Amended Agreement, you must find that Norman Bloom and the Bloom Trusts "assented" to its terms – meaning they agreed to them. You may find such assent to be "express" – in other words expressed verbally or in writing – or you may find such assent to be implied by the parties. Parties are bound to the terms of a contract, even if they do not sign it if, knowing the terms of the agreement, they accept its benefits. Thus, if you find that plaintiff Norman Bloom and trustee Paul Zill knew of the proposed Third Amended Agreement and, without objecting, permitted Douglas to continue working and accepted the benefits of that work, then you may find them to be bound by the terms of the Third Amended Agreement.

### Authority

Schwarzschild v. Martin, 191 Conn. 316, 321, 464 A.2d 774 (1983); Dornemann v. Dornemann, 48 Conn. Supp. 502 (2004); Ferraro v. Christina, 1994 WL 271830 (Conn. Super. June 13, 1994); Mozzochi v. Luchs, 35 Conn. Supp. 19, 23 (1977); Bartomeli v. Bartomeli, 65 Conn. App. 408 (2001); 17 Am. Jur.2d Contracts §70 (2004).

2

### Quantum Meruit

**In the event you find that Douglas did not enter into a Contract with Norman Bloom, or the Bloom trusts, or both, he may still be entitled to compensation for the reasonable value of his services. The law recognizes a need to avoid unjust enrichment of a party, even in the absence of a contractual agreement. Under this theory, you may find for Mr. Douglas, if you find that he performed services for Mr. Norman Bloom, or the Bloom Trusts, or both, with the expectation of payment, and that Mr. Norman Bloom, or the Bloom Trusts, or both accepted such services, and that under the circumstances, it would be unjust for Mr. Norman Bloom, or the Bloom Trusts, or both, to accepts such benefits without compensating Mr. Douglas.**

Gagne v. Vaccaro, 255 Conn. 390 (2001)

Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736 (1998), aff'd 269 F.3d 114 (1999).

General Elec. Capital Corp. v. DirecTV, Inc., 94 F. Supp 2d 190 (D. Conn. 1999).

C.R. Klewin, Inc. v. Flagship Properties, Inc., 955 F.2d. 5 (2nd Cir. 1992).

3

## **Unauthorized Practice of Law**

Plaintiff Norman Bloom and the Bloom Trusts contend that even if they are bound by the Agreement and the amendments to it, they nonetheless are not obligated to pay Douglas because in performing his obligations, he engaged in the unauthorized practice of law. The law in Connecticut is that someone who is not licensed to practice law in Connecticut may not be compensated for services performed in Connecticut that constitute the practice of law. In this case, Plaintiff Norman Bloom and the Bloom Trusts contend that defendant Michael Douglas performed services for them that constituted the practice of law in Connecticut, and therefore he is not entitled to be compensated for such services. In order for them to prevail on that claim, you must find that Plantiff Norman Bloom and the Bloom Trusts have proved by a fair preponderance of the evidence   1) that in performing his obligations under the Agreement, defendant Michael Douglas engaged in the "practice of law; 2) that his work was "unauthorized" under Connecticut law; and 3) that the work Mr. Douglas performed that constituted the practice of law was performed in Connecticut. I will explain each of these elements to you now.

4

### Practice of Law

First, in order to find for plaintiff on this issue, you must find that Mr. Douglas engaged in the practice of law. Determining whether a person has engaged in the practice of law requires a thorough and fact-specific inquiry. The question is whether Mr. Douglas engaged in acts, in or out of court, that are "commonly understood to be the practice of law." It is important to emphasize, however, that an act is not "the practice of law" merely because it is commonly performed by attorneys. Rather, the "practice of law" for these purposes includes only those activities that <u>only</u> attorneys may perform. In this case, you have heard the testimony of Professor Dennis Curtis and Attorney Sid Miller on the issue of what is commonly understood to be the practice of law in Connecticut. Your job is to evaluate the testimony, and decide whether you think that Douglas' activities in Connecticut constitute the unauthorized practice of law.

<u>Authority</u>

Conn. Gen. Stat. § 51-88; <u>Statewide Grievance Committee v. Patton</u>, 239 Conn. 251, 683 A.2d 1359 (1996); <u>State Bar Assn. v. Connecticut Bank & Trust Co.</u>, 145 Conn. 222, 140 A.2d 863 (1958); <u>Grievance Committee v. Payne</u>, 128 Conn. 325, 22 A.2d 623 (1941); <u>State Bar Ass'n v. Connecticut Bank & Trust Co.</u>, 145 Conn. 222, 140 A.2d 863 (1958) ; <u>In re Darlene C.</u>, 247 Conn. 1, 717 A.2d 1242 (1998).

## Participation of Connecticut Counsel

Second, even if you find that Douglas' work, or some of Douglas' work was the practice of law, you may find that such work was not the **unauthorized** practice of law. Where an out-of-state attorney discloses the fact that he is not licensed in Connecticut, and he associates with Connecticut attorneys who assume ultimate accountability for decisions implicating Connecticut law, that attorney does not engage in the unauthorized practice of law. That is true because the fears associated with unauthorized individuals engaging in the practice of law are mitigated significantly when Connecticut attorneys maintain ultimate responsibility for issues that implicate Connecticut law. Thus, in this case, even if you find that Michael Douglas engaged in some behavior in Connecticut that amounted to the "practice of law," he is nonetheless entitled to compensation if you also find that he worked closely with Connecticut attorneys and that those Connecticut attorneys maintained ultimate responsibility for issues arising under Connecticut law.

<u>Authority</u>

Ruling On Plaintiff/Third Party Defendant's Motion For Summary Judgment [Docket No.  pp. 9-11]; 11 A.L.R.3d 907 (2004); 7 Am. Jur. Attorneys at Law §259 (2003); ABA Committee on Ethics and Professional Responsibility, Formal Op. 316 (1967); <u>Winer v. Jonal Corporation,</u> 169 Mont. 247, 545 P.2d 1094 (1976); <u>Brooks v. Volunteer Harbor No. 4,</u> 233 Mass. 168, 123 N.E. 511 (1919); <u>Lindsey v. Ogden,</u> 10 Mass. App. Ct. 142, 406 N.E.2d 701 (1980); <u>Somuah v. Flachs,</u> 352 Md. 241, 721 A.2d 680 (1998); ABA Model Rules of Professional Conduct; <u>Freeling v. Tucker,</u> 49 Idaho 475, 289 P.85 (1930); <u>Dietrich Corp. v. King Resources Co.,</u> 596 F.2d 422 (10th Cir. 1979).

## Services Performed In New York

It is important to keep in mind that the rule prohibiting compensation for the unauthorized practice of law applies **only** to work performed that constitutes the practice of law **in Connecticut**. A party who performs work constituting the practice of law in a state in which he is licensed to practice law is entitled to be compensated for that work. That is true even if the issues raised are related to laws or proceedings in another state. In this case, all parties agree that Michael Douglas is an attorney duly licensed to practice law in the State of New York. Mr. Douglas has further offered evidence that much of the work he did for plaintiff Norman Bloom and the Bloom trusts was performed in New York where he is licensed to practice. Thus, if even if you find that some of the work performed by Michael Douglas in Connecticut constituted the unauthorized practice of law, you must still award compensation to Mr. Douglas for work performed in the State of New York.

Authority
Estate of Waring, 221 A.2d 193 (N.J. 1966); ABA Committee on Ethics and Professional Responsibility, Formal Op. 316 (1967); Restatement (3rd) The Law Governing Lawyers § 3 cmt. (2001); Kellett v. Dolin, 1999 WL 814364 (D. N.H. May 28, 1999); El Genayel v. Seaman, 533 N.E.2d 245 (N.Y. 1988); Lindsey v. Ogden, 10 Mass App. Ct. 142 (1980); Lamb v. Jones, 202 So.2d 810 (Fla. Dist. Ct. App. 1967); Fought & Co. v. Steel Eng'g and Erecting, Inc., 951 P.2d 487 (Haw. 1998).

7

## Pro Rata Apportionment of Services

Finally, if you find that <u>some</u> of Mr. Douglas' work constituted the unauthorized practice of law, and some of his work did not constitute the unauthorized practice of law, then you must determine to what compensation he is entitled for the portion of his services that did not constituted the unauthorized practice of law. On this issue, plaintiff has the burden of proving which services were performed in Connecticut and are not entitled to compensation.

Authority

Ruling On Plaintiff/Third Party Defendant's Motion For Summary Judgment; Dcket No.   p 16]; <u>Perlah v. SEI Corp.</u>, 29 Conn. App. 43 (1992).

## DAMAGES

If you find that the Norman Bloom or the Bloom Trusts, or both, are liable to defendant Michael Douglas for any or all of the services he performed, then you must determine the amount of money to award to Mr. Douglas. The following instructions tell you how to do that.

If you find that they are not obligated to pay for any of the services performed by Douglas, then you do not need to consider the subject of damages.

9

### Defendants Burden of Proof as to Damages on Counterclaims

The defendant Michael Douglas must prove by a preponderance of the evidence the amount of any damages to be awarded. The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty. Although damages may be based on reasonable and probable estimates, you may not award damages on the basis of guess or speculation.

<u>Authority</u>

<u>Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin</u>, 247 Conn. 48, 69 (1998); <u>West Haven Sound Development Corp. v. West Haven</u>, 207 Conn. 308, 317 (1988); <u>Bronson & Townsend Co. v. Battistoni</u>, 167 Conn. 321, 326-27 (1974); <u>Bertozzi v. McCarthy</u>, 164 Conn. 463, 468 (1973).

### Expectation/Benefit of the Bargain/Make Whole

Any damages you award to Mr. Douglas on the Contract should be designed to place him, so far as can be done by money, in the same position as that which he would have been in had the Contract been fully honored by plaintiff Norman Bloom and the Bloom Trusts. You should determine the fair and reasonable value, in money, of the position the plaintiff would have been in if the defendant had fully performed the contract.

In this case the Agreement, as amended, calls for Mr. Douglas to be compensated in two ways. First, it calls for Mr. Douglas to be compensated at a rate of $200.00 per hour for hourly billing. Second, Mr. Douglas is to be compensated based on the formula set forth in the First Amendment to the Agreement. That formula is based on the value of Norman Bloom's estate and works as follows:

Once the Estate of Norman R. Bloom settled, Douglas was to be entitled to:

a) 5% of the value of plaintiff Norman C. Bloom's share between Three and Four Million Dollars; plus

b) 2% of the value of plaintiff Norman C. Bloom's share between Four and Five Million Dollars; plus

c) 6% of the value of plaintiff Norman C. Bloom's share between Five and Six Million Dollars; plus

d) 6% of the value of plaintiff Norman C. Bloom's share between Six and Seven Million dollars; plus

e) 6% of the value of his share between Seven and Eight Million dollars; plus

f) 5% of his share for any value over Eight Million Dollars.

### Authority

Beckman v. Jalich Homes, Inc., 190 Conn. 299, 309-10 (1983); Lar Rob Bus Corp. v. Fairfield, 170 Conn. 397, 404-05 (1976); Bachman v. Fortuna, 145 Conn. 191, 194 (1958).



### Interest (Pursuant to General Statutes § 37-3a)

In addition to damages on the contract, you may award interest. This is intended to compensate Mr. Douglas for the loss of use of money that was not paid when it was due. To award interest, you must find that he is entitled to an award of damages in the first place, and you must also find under all of the circumstances that Mr. Bloom and the Bloom Trusts wrongfully detained money due to Mr. Douglas. There is no hard and fast rule for what constitutes wrongful detention. The question is whether justice requires that Mr. Douglas be paid interest for the loss of use of money.

If you decide to award interest, then you must compute the amount. Your verdict form will help you to do this. You must first determine the time period that the money was wrongfully detained. In this case, it is claimed that the wrongful detention began on or about April 1st, 2002, when Douglas first requested payment from Mr. Bloom, and the end date would be _____ [date of the verdict]. You need to determine that total number of days. Under our statutes you must divide that number of days by 360 days. You should then multiply that by 10 percent, which is the relevant interest rate. You should then multiply that percentage by the total amount of damages to come up with the amount of interest.

#### Authority

Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 734-38 (1997) (holding that wrongful detention is determined "in view of the demands of justice rather than through application of an arbitrary rule"); West Haven Sound Development Corp. v. West Haven, 207 Conn. 308, 321 (1988); Scribner v. O'Brien, Inc., 169 Conn. 389, 405-06 (1975); Southern New England Contracting Co. v. State, 165 Conn. 644, 664-65 (1974); Bertozzi v. McCarthy, 164 Conn. 463, 467 (1973); Rapin v. Nettleton, 50 Conn. App. 640, 651 (1998); Sperry v. Moler, 3 Conn. App. 692, 695-96 (1985); See Conn. Gen. Stat. §§ 37-3a and 37-1.