UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 MAR -7 A 9: 47
U.S. DISTRICT COURT
NEW HAVEN, CT

---------------------------------------------------------------X

NORMAN C. BLOOM,
Plaintiff,

v.

MICHAEL A. DOUGLAS,
Defendant and Third-Party Plaintiff,

v.

NORMAN C. BLOOM, NORMAN R. BLOOM REVOCABLE TRUST, NORMAN R. BLOOM FAMILY SPRAY TRUST, and NORMAN R. BLOOM IRREVOCABLE INSURANCE TRUST,
Third-Party Defendants.

---------------------------------------------------------------X

3:02CV907(PCD)

MARCH 7, 2005

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATING TO OFFERS OF SETTLEMENT OR COMPROMISE**

Plaintiff and third-party defendants submit this response to defendant and third-party plaintiff's motion *in limine*. Defendant's motion seeks to exclude evidence defendant claims relates to an offer of settlement or compromise. Defendant mischaracterizes the nature of the evidence he seeks to preclude. Rule 408 of the Federal Rules of Evidence[1] has absolutely no application to the evidence to which defendant objects because there is simply nothing in the disputed documents which purports to be an offer of settlement or compromise.

Instead, the disputed documents contain mere demands for payment and, in essence, are nothing more than a bill. The law of this Circuit has long been that statements by an authorized representative setting forth an amount then considered to be due is not excludable under the

[1] Although defendant purports to make its motion under Rule 408 of the Federal Rules of Civil Procedure (see page 1 of motion), defendant most certainly meant to refer to Rule 408 of the Federal Rules of Evidence.

doctrine precluding evidence of settlement negotiations. *See e.g.,* United States of America, for use of D'Agostino Excavators, Inc. v. Heyward-Robinson Co., Inc., 430 F.2d 1077, 1083 (2nd Cir. 1970), *cert. denied,* 400 U.S. 1021 (1971).

Defendant objects to two documents. Neither falls within the ambit of the exclusionary rule of Rule 408. The first is an undated "tally sheet" which is attached hereto as Exhibit 1. Defendant, Michael A. Douglas, delivered the "tally sheet" directly to plaintiff, Norman Bloom, after the Divisive Reorganization Agreement was reached. At that point in time, there *was no dispute* between the parties.[2] The second disputed document is a letter from Michael Douglas' previous counsel, Slavitt, Connery & Vardamis to counsel for plaintiff and the third-party defendants dated May 2, 2004. The Slavitt letter enclosed the same tally sheet which Douglas had himself earlier delivered to Bloom. It also attached several other statements for "legal services rendered" that had been previously sent by Douglas to Bloom. The Slavitt letter is attached hereto as Exhibit 2.

Examination of the face of both documents readily indicates that neither is an offer of compromise but merely an account of what was then alleged to be due and owing. Documents in the nature of mere invoices, however, are not protected under Rule 408. For, as noted by the court in Winchester Packaging, Inc. v. Mobil Chemical Co., 14 F. 3d 316 (7th Cir. 1994):

> But a bill that itemizes what the sender thinks the recipient owes him and demands -- even under thereat of legal action -- payment is not an offer in settlement or a document in settlement negotiations and hence is not excludable by force of Rule 408. *Perzinski v. Chevron Chemical Co., 503 F.2d 654, 657-58 (7th Cir. 1974); United States for Use of D'Agostino Excavator's, Inc. v. Heyward-Robinson Co., 430 F.2d 1077, 1083 (2nd Cir. 1970); J.&B. Motors, Inc. v. Margolis, 75 Ariz. 392, 257 P.2d 588, 590 (Ariz. 1953); Gallagher v. Viking Supply Corp., 3 Ariz. App. 55, 411 P.2d 814, 819 (Ariz. App. 1966).* Dunning a deadbeat by threatening to sue is

[2] Rule 408 specifically requires a claim that is "disputed as to either validity or amount."

> not the same thing as making an offer or a demand in the context of a settlement negotiation.

14 F.3d at 319-20. Simply stated, on their face, the disputed documents do not offer to compromise Douglas' claim and they also fail to contain any suggestion of a settlement. *See e.g.,* Sunstar, Inc. v. Alberto-Culver, Co., Inc., 2004 U.S. Dist. LEXIS 16855, *66 (N. D. Ill. 2004). They are only a statement of Douglas' position of what he alleges is owed. Both documents merely state an account and are devoid of any indication that Douglas is making an offer of settlement or compromise.

Citing Pierce v. Tripler & Co., 955 F.2d 820 (2d Cir. 1991), defendant would have this Court mistakenly believe that the letter from Attorney Slavitt is automatically entitled to exclusion under Rule 408 merely because Douglas had retained counsel. Not so! The correct and *full* quote from Pierce is as follows:

> However, where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, **any offer made between attorneys** will be presumed to be an offer within the scope of Rule 408. (Emphasis added).

955 F.2d at 827. In other words, there *still* must be an offer of settlement or compromise. The Court can search the text of Attorney Slavitt's letter, but nowhere will it find either an offer to take an amount of money in settlement of Douglas' claim or a plan of compromise. It just states what Douglas alleges is owed.

Defendant argues that letters from counsel "are plainly offers to compromise a disputed claim and are likewise inadmissible." See p.2 of defendant's Motion. In essence, defendant claims that because Douglas' attorney sent the letter, it somehow clothes the document in the garb of settlement and compromise. But, as the court's decision in Kraemer v. Franklin & Marshall College, 909 F. Supp. 267 (E.D. Pa 1995) teaches, even attorneys' letters must contain

an offer of settlement or compromise to be excluded under Rule 408. In Kraemer, David Keller, an attorney representing defendant, had sent a letter in reply to Debbie Sandler, counsel for plaintiff, who had threatened EEOC charges if plaintiff was not offered a tenure-track faculty appointment. Defendant's counsel in his reply invited the plaintiff to file charges with the EEOC as the college did not intend to settle the claim. 909 F. Supp. 267. Defendant claimed the letter from its counsel should be excluded under Rule 408. Plaintiff claimed the exchange of letters did not constitute settlement discussions. Id.

In finding for plaintiff, the Kraemer Court reasoned as follows:

> The Court finds persuasive Plaintiff's argument that the letter of David Keller was not part of compromise negotiations nor was it an offer to settle Plaintiff's claim. While litigation "need not have commenced for Rule 408 to apply," there must be some dispute which the parties are attempting to resolve through discussion. *See Affiliated Manufacturer's, Inc. v. Aluminum Co. of America, 56 F.3d 521, 526 (3rd Cir. 1995) (*Rule 408 encourages "freedom of discussion with regard to compromise.") Although there is a difference of view between the parties as to the validity of Plaintiff's claim, **no compromise negotiations or offers to settle occurred, Ms. Sandler's letter was not an offer to settle a claim, but a demand for a tenure-track faculty appointment, accompanied by a threat of legal action.** See *Winchester Packaging, Inc. v. Mobil Chemical Co., 14 F.3d 316, 319 (7th Cir. 1994)*(a demand for payment accompanied by a threat of legal action is not a settlement offer). **Keller's response inviting the Plaintiff to file charges with the EEOC, was not a statement made in compromise negotiations.** (Emphasis added).

909 F. Supp at 268. *See also* Hanson v. Waller, 888 F.2d 806, 813-14 (11th Cir. 1989) (court found that letter from plaintiff's attorney was not excludable under Rule 408 where the letter contained merely an invitation to try to settle the case and there was nothing said in the letter about compromise).

So too here, the contents of the letter from attorney Slavitt are not "evidence of '(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept

a valuable consideration in compromising or attempting to accept, a claim which was disputed as to either validity or amount.' *Fed. R. Evid. 408.*" Hanson, 888 F.2d at 814.

CONCLUSION

Accordingly, defendant's motion *in limine* to preclude evidence relating to offers of settlement or compromise should be denied in all respects.

Dated: Easton, Connecticut
March 7, 2005

LOVEJOY & ASSOCIATES, LLC.
Attorneys for Plaintiff, Norman C. Bloom and for
Third-Party Defendants, Norman R. Bloom Revocable Trust
Norman R. Bloom Family Spray Trust and
Norman R. Bloom Irrevocable Insurance Trust

By:__________________________
Frederick A. Lovejoy (CT 03121)
276 Center Road
Easton, Connecticut
Phone (203) 459-9941
Telefax (203) 459-9943

Bloom/Motion in LimineResposnse.doc

# Exhibit 1

1-6/95-11/30/96 balance (billed and charged hourly rate) $106,000

2-12/01/96-11/30/97 (12 months billed at 7 1/2 hrs per m.) $ 18,000 (actual wk ave.30hr $72,000)

3-12/01/97-12/31/98 (13 months billed at 7 1/2 hrs per m) $ 19,500 (actual week average 30hrs $78,000)

4-1/01/99-1/31/00 (13 months billed at 7 ½ hrs per m)- $19,500(actual week average 30/40hrs=$78,000)

5-2/01/00-5/31/00(4 months at 21 hrs per m. to reflect prior(1999) and current work load)= $16,800 (actual wk ave.40hrs per m.=$32,000)

6-6/01/00-7/31/01(14 months at 15hrs per m.)= $42,000 (actual wk ave.40/50hr per m.= $112,000)

7-8/01/01-3/31/01(8 months at 15hr per m.)= $24,000**

| | | |
|---|---|---|
| Totals: Balance ending 1/31/00: | $145,300.00 | |
| 2/01/00-5/31/00 | 16,800.00 | |
| 6/01/00-7/31/01 | 42.000.00 | |
| 8/01/01-3/31/02 | 24,000.00* | |
| subtotal | $228,100.00 | |
| | | 5%$3M-$4M=$50,000 |
| | | 2%$4M-$5M=$20,000 |
| | | 5%$5M-$6M=$50,000 |
| | $120,000 | Total: $ 120,000 |
| total | $348,100 | |
| payments: Aug.2001: | -$20,000 | |
| Nov.2001 | -10,000 | |
| Jan.2002 | -10,000 | |
| Feb.2002 | -5,000 | |
| TOTAL Balance | $303,100 | |

Without prejudice For Discussion purposes only

# Exhibit 2

PLAINTIFF'S EXHIBIT 400

LAW OFFICES

SLAVITT, CONNERY & VARDAMIS

618 WEST AVENUE

P. O. BOX 2129

NORWALK, CONNECTICUT 06852-2129

(203) 838-7555

ABRAHAM D. SLAVITT (1994)
PAUL R. CONNERY (1953)
ROBERT A. SLAVITT
GEORGE A. VARDAMIS (2001)
STEPHEN A. HABETZ*
S. ANTOINETTE MORTON
TRICIA L. PINTO**
RAUN M. MARLIN
TODD D. HAASE

*ALSO ADMITTED IN D.C.
**ALSO ADMITTED IN NEW YORK

FRANCIS M. BOSZE
OF COUNSEL

HARRY M. LESSIN (1990)

R. E. VAN NORSTRAND (1995)
OF COUNSEL

TELECOPIER (203) 866-9724

May 2, 2002

Lovejoy & Associates
3695 Post Road
Southport, CT 06490
*Attn: Frederick J. Lovejoy, Esq.*

***Re: Estate of Norman C. Bloom***

Dear Mr. Lovejoy:

I am forwarding to you once again the tally sheet of the Douglas invoice balance of $303,100.00. You will note the first item is $106,000.00 for services through November 30th, 1996. I enclose as well a copy of the second amendment to agreement between the parties, Paragraph 5 of which states that Mr. Bloom, "acknowledges the outstanding bill of $106,800.00 from June of 1995 through November 30th, 1996." You will also find a memo to Mr. Bloom acknowledged and signed by him and agreed to by him that there are legal fees due in the amount of $18,000.00 for work from December of 1996 through November of 1997; in addition, you will find under date of January 1st, 1999 and again, an agreed-upon acknowledgment of legal fees due from December 1st, 1997 through 1998 in the amount of $19,500.00 against which there is an agreed payment of $3,500.00 and a balance of $16,000.00 with a prior accumulated balance of $140,800.00, being the $18,000.00 on the November 20th, 1997 memo, the $16,000.00 on the January 1st, 1999 memo and the acknowledged balance of $106,800.00 from the second amendment to agreement acknowledgment of balances due, thus making a total agreed balance due through December 31st, 1998 of $140,800.00. You will also find a memo dated February 8th, 2000, which Mr. Bloom signed and agreed was an additional fee total for $24,500.00 plus expenses and crediting a payment of $20,000.00, leaving a balance due on that statement of $4,500.00, to bring the total to $145,300.00.

This would bring the matter to February 1st, 2000, and since that time, there are additional charges for which I have supplied you all of the time sheets, since everything prior to that had been agreed to by Mr. Bloom in writing.

You have demanded the prior time sheets even though Mr. Bloom has agreed that the balances are due. I will ask Mr. Douglas to locate these if he can, and ask that he get them to you as soon as possible. However, that will not be considered as any concession that prior time sheets to which Mr. Bloom has already signed off and agreed to are his or your right to examine, but will be furnished as a courtesy. We further make demand for the balance due and will work on a payment schedule. Since Mr. Bloom has given you between $10-15,000.00 to pay to Mr. Douglas, I can see no reason why that is not being paid against the $300,000.00 balance, even without the ancient time sheets.

Nothing in this letter contained shall be deemed a waiver or relinquishment of any rights, whether procedural or substantive.

May I hear from you immediately at minimum by delivery of the checks you are holding against a balance of several hundred thousand dollars admitted to and agreed upon by Mr. Bloom in writing?

Very truly yours,

SLAVITT, CONNERY & VARDAMIS

Robert A. Slavitt

RAS:gkc
Enclosures

106-D:\Douglas\lovejoy.050202.wpd

1-6/95-11/30/96 balance (billed and charged hourly rate) $106,000

2-12/01/96-11/30/97 (12 months billed at 7 1/2 hrs per m.) $ 18,000 (actual wk ave.30hr $72,000)

3-12/01/97-12/31/98 (13 months billed at 7 1/2 hrs per m) $ 19,500 (actual week average 30hrs $78,000)

4-1/01/99-1/31/00 (13 months billed at 7 ½ hrs per m)-- $19,500(actual week average 30/40hrs=$78,000)

5-2/01/00-5/31/00(4 months at 21 hrs per m. to reflect prior(1999) and current work load)= $16,800 (actual wk ave.40hrs per m.=$32,000)

6-6/01/00-7/31/01(14 months at 15hrs per m.)= $42,000 (actual wk ave.40/50hr per m.= $112,000)

7-8/01/01-3/31/01(8 months at 15hr per m.)= $24,000**

| Totals: Balance ending 1/31/00: | $145,300.00 |
|---|---|
| 2/01/00-5/31/00 | 16,800.00 |
| 6/01/00-7/31/01 | 42,000.00 |
| 8/01/01-3/31/02 | 24,000.00* |
| subtotal | $228,100.00 |

5%$3M-$4M=$50,000
2%$4M-$5M=$20,000
5%$5M-$6M=$50,000
Total: $ 120,000

| | $120,000 |
|---|---|
| total | $348,100 |

| payments: | | |
|---|---|---|
| | Aug.2001: | -$20,000 |
| | Nov.2001 | -10,000 |
| | Jan.2002 | -10,000 |
| | Feb.2002 | -5,000 |

TOTAL Balance $303,100

Without prejudice For Discussion purposes only

Apr 08 02 11:17a NORMBLOOM&SON 2038865705 p.1

# SECOND AMENDMENT TO AGREEMENT

SECOND AMENDMENT TO AGREEMENT dated June 19,1995, between NORMAN C. BLOOM, residing at 3 Fifth Street, East Norwalk, Connecticut, hereinafter known as "BLOOM" and MICHAEL A. DOUGLAS, attorney with offices at 13 East 16th Street, New York, N.Y. hereinafter known as "DOUGLAS", agree to the following:

1- That due to a change of strategy, it was agreed between the parties that "BLOOM' would retain separate attorneys in Connecticut to represent his interests, instead of depending on the attorneys for the Trustee i.e. Westport Bank & Trust Co.

2- In addition to retaining new Counsel it was agreed between the "BLOOM" and "DOUGLAS" that Douglas would play a more active role, i.e. accompanying "BLOOM" at legal proceedings and meetings and actively join the new attorneys COHN &WOLF in the decision making process.

3- As such, it was agreed between the parties that while the aforementioned AGREEMENT (June19,1995) and the first AMENDMENT ( September 19,1995) is still in effect, due to changes in "DOUGLAS'S" role ; "BLOOM " on receipt of "DOUGLAS'S " bill shall pay "DOUGLAS" for his expenses and make an occasional payment against the accumulated HOURLY WORK bill when possible.

4- "DOUGLAS", acknowledges payment by "BLOOM" OF $10,000.00 against the aforementioned bill.

5- 'BLOOM" acknowledges the outstanding bill of $106,800. Dating from June of 1995 going through November 30,1996.

Norman C Bloom

NORMAN C. BLOOM

Michael Douglas

MICHAEL A. DOUGLAS

Dated: January 1997
East Norwalk, CT

**Michael A. Douglas**
**Attornet At Law**

# Memo

**To:** Norman Bloom

**From:** Michael A. Douglas

**Date:** November 20, 1997

**Re:** Bloom Estate

---

Statement for Legal Service Rendered

From December 1996 to November 1997

Based on 7.5 hours per month at $200 per hour = $1500. Per month

$1500.00 x 12 months = $18,000 for above time period

AGREED:

Norman C Bloom

NORMAN BLOOM

**Michael A. Douglas**
**Attorney At Law**

# Memo

**To:** Norman C. BLOOM

**From:** Michael A. Douglas

**Date:** January 1, 1999

**Re:** Bloom Estate

---

STATEMENT OF LEGAL SERVICE RENDERED

From December 1,1997 to December 31,1998

Based on 7.5 hours per month at $200 per hour = $1500 per month

$1500.00x 13 months =$19,500.00

payment 3,500.00

balance for above period $16,000.00

Total balance owed $140,800.00

AGREED:

Norman C Bloom

NORMAN C. BLOOM

**Michael A. Douglas**
**Attorney At Law**

# Memo

**To:** Norman C. BLOOM

**From:** Michael A. Douglas

**Date:** February 8, 2000

**Re:** Bloom Estate

---

STATEMENT OF LEGAL SERVICE RENDERED

From January 1,1999 to January 31, 2000

Based on 7.5 hours per month at $200 per hour = $1500 per month

$1500.00x 13 months =$19,500.00

additional service =$ 5000.00

Payment =$20,000.00 paid

expenses $2500. (1998)

expenses $2500 paid February 1999

expenses $2500 (1999) Due

balance from Statement dated January 1,1999:$140,800.00

Total balance owed $145,300.00

AGREED:

Norman C Bloom

NORMAN C. BLOOM

CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was ~~mailed~~ delivered by hand on March 7, 2005, ~~postage prepaid~~, to:

Jacobs, Grudberg, Belt, Dow & Katz P.C.
Attn: Joshua D. Lanning, Esq.
350 Orange Street, P.O. Box 606
New Haven, CT 06503

Frederick A. Lovejoy