UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------X

NORMAN C. BLOOM,

                    Plaintiff

           v.

MICHAEL A. DOUGLAS,

                    Defendant and Third
                    Party Plaintiff

           v.

NORMAN C. BLOOM, NORMAN R.
BLOOM RECOVABLE TRUST,
NORMAN R. BLOOM FAMILY SPRAY TRUST
and NORMAN R. BLOOM IRREVOCABLE
INSURANCE TRUST

                    Third Party Defendants

3:02CV907(PCD)

March 8, 2005

## DEFENDANT'S MEMORANDUM IN SUPPORT OF PROPOSED JURY INSTRUCTIONS

       Defendant in the above-captioned matter respectfully submits the following memorandum in support of certain of its proposed jury instructions.

## I.  Douglas is Entitled to Compensation Since He Disclosed His Out-of-State Status and Associated With Connecticut Counsel

       Plaintiff and third party defendants correctly state the hornbook rule that an attorney licensed in one state, <u>generally</u>, may not recover for legal services provided in another state.

       But that tenet is only part of the puzzle. Recognizing the realities of modern, multistate practice, and the harshness of such a bright line, courts have consistently permitted out-of-state attorneys to recover fees where, as here, the attorney fully discloses

his unlicensed status locally and associates himself with local counsel.[1]  <u>See</u>, e.g., 11

ALR3d 907 (2004) (noting the "line of cases and general rule holding that an attorney

who is a member of the bar of one state may recover for the reasonable value of legal

services rendered in a state in which he is not a member of the bar when he has not held

himself out as a member of the latter state's bar, and has associated himself with local

counsel'."); *see also*, 7 Am. Jur.2d Attorneys at Law §259 (2003) ("[A]n out-of-state

attorney may be allowed compensation for local services, even though he or she is not

admitted locally where, prior to the rendition of the services, the attorney makes a full

disclosure to the client of his or her lack of local license and does not conceal or

misrepresent the true facts.");  ABA Committee on Ethics and Professional

Responsibility, Formal Op. 316 (1967) (attorneys may associate themselves with

attorneys from another state so long they do not mislead the client as to their authority;

such arrangements "permit the profession to face up to the problems of interstate

metropolitan area and interstate business activities, as well as permitting the public to be

served in an adequate way").

    Although Connecticut courts have never faced this issue directly, Supreme Court

decisions from other states demonstrate the wisdom of the exception:

> [The rule] that an attorney licensed in one state may recover for services
> rendered in a state in which he is not duly licensed, if he initially discloses
> that fact to his client and further informs him of the necessity to associate
> with local counsel [is one] which, in all fairness, we feel impelled to adopt.
> We find that such an interpretation is better suited to the modern practice of
> law and in the interests of promoting comity between the states . . . Under
> these circumstances, neither the spirit nor the intent of [laws] regulating the
> right to practice law in this state, has been violated.

---

[1] In order to blunt the harshness of the general rule, Courts have also developed other exceptions. Courts have held, for example, that an out-of-state attorney may recover for service provided in-state on issues of federal law, <u>See, Spanos v. Skouras Theatres Corp.</u>, 364 F.2d 161 (2d Cir. 1966) (federal antitrust claim);<u>Western Life Ins. Co. v. Nanney</u>, 296 F. Supp. 432, 440 (E.D. Tenn. 1969); and on issues involving arbitration: <u>Williamson, P.A. v. John D. Quinn Constr. Corp.</u>, 537 F. Supp. 613, 616 (S.D.N.Y. 1982) (New Jersey attorney could recover fees earned in connection with New York arbitration proceedings).

Winer v. Jonal Corporation, 169 Mont. 247, 252 545 P.2d 1094, 1097 (1976). *See also*, Brooks v. Volunteer Harbor No. 4, 233 Mass. 168, 123 N.E. 511 (1919) (attorney, though unlicensed in Massachusetts, could recover fees for legal services performed in that state where he did not hold himself out as a Massachusetts attorney, informed client that he was not licensed to practice in State, and notified client that it would be necessary to obtain local counsel); Lindsey v. Ogden, 10 Mass. App. Ct. 142, 406 N.E.2d 701 (1980) (rejecting argument that attorney licensed in New York engaged in unauthorized practice of law in Massachusetts since attorney " never held himself out as a Massachusetts lawyer, never drew any documents in Massachusetts, and never did anything else that would be considered the practice of law in this state."); Somuah v. Flachs, 352 Md. 241, 262,  721 A.2d 680, 690 (1998) (permitting out of state attorney's *quan tum meruit* claim and emphasizing that attorney " did not and does not have a Maryland office, and he did not engage in any advertising or solicitation that led to his introduction to Petitioner."); ABA, Model Rules of Professional Conduct, Annotated p. 457 (noting that one option to avoid violating unauthorized-practice law prohibition is to associate with counsel in the foreign jurisdiction).

In Freeling v. Tucker, 49 Idaho 475, 289 P. 85 (1930), the Idaho Supreme Court permitted compensation under circumstances far more extreme.  There an out-of-state attorney was hired to represent the defendant's interest as an heir of a re cently deceased relative.  The attorney studied Idaho probate laws, and in fact made appearances on the defendant's behalf in Idaho probate court.

As in the present case, the defendant refused to pay her bill, and argued at trial that she owed the attorney nothing since he was not licensed to practice in Idaho. Rejecting that argument, the Court emphasized as follows:

> It is not contended the contract in suit was invalid where made, that respondent falsely represented himself to be an attorney or that there was any deception on the part of the respondent as to his authority to practice as an attorney. No objection appears to have been made to respondent's appearance in the probate court . . . which constituted but a portion of the performance of his contract with appellant.

Id. at 86.

The Court also emphasized that statutes prohibiting the unauthorized practice of law are aimed at persons holding themselves out as qualified practice law without the proper credentials. Id. It distinguished the case before it, noting that the attorney "has not offended the spirit or intention of these statutes." Id.

In the present case, plaintiff/third-party defendants do not, and cannot assert that Norman C. was anything other than fully informed about Douglas' status as unlicensed in Connecticut. Norman C.'s Connecticut counsel has testified that he knew this fact from "day one." Douglas repeatedly reminded Norman C. that he was not a Connecticut attorney, and took lengths to ensure that their Agreement provided that he would not act as Norman C.'s attorney in the underlying proceedings. Moreover, at all times Norman C. maintained Connecticut counsel who remained responsible for issues implicating Connecticut law.

To disallow compensation for services under these circumstances would permit Norman C. an enormous windfall, while doing nothing to contribute to the goals of the prohibition on unauthorized practice of law. The purpose of unauthorized practice statutes is to secure competent legal advice for the client. See, Restatement (3rd) The

Law Governing Lawyers, § 4 cmt b.(1998). That goal is accomplished when an attorney

discloses his out-of-state status, and ensures that the client has local representation

responsible for all issues implicating law. See, Ruling on Plaintiff/Third Party

Defendant's Motion for Summary Judmgent [Docket No. 67] ("to the extent Plaintiff

retained local counsel who were closely involved in the case and advised him on

Connecticut law, the public policy concerns, regarding a client being represented by no

one under the purview of the Connecticut Bar, are mitigated significantly"); see also

Dietrich Corp. v. King Resources Co., 596 F.2d 422, 426 (10th Cir. 1979) (noting that

when an attorney consults with a local law firm, his services are technically no different

than those of an unlicensed law clerk or paralegal and are not unauthorized). The

alternative is to unjustly forfeit a fairly earned fee.[2] See, Phillips, Pamela and SeLegue,

Sean, "Rules Regulating Attorneys Handling Out-of-State Matters Are Often Outdated,"

20 National Law Journal vol. 15 p B4 (December 8, 1997) (noting that permitting an out-

of-state attorney to recover fees for in-state service unless he violated local ethical

cannons "would avoid the unfairness of allowing a client to refuse to pay the lawyer

solely because of the attorney's lack of a local license, even though the client was aware

of that fact").

Perlah v. S.E.I. Corporation, 29 Conn. App. 43, 612 A.2d 806 (1992), upon which

movants primarily rely is a very different case. The attorney there clearly held himself

out as a Connecticut attorney, maintaining an office and soliciting clients within the state

---

[2] Fee forfeiture is a particularly harsh remedy that would not be proportionate under the circumstances even if movants were correct. See, Restatement (3rd) Law Governing Lawyers § 37 cmt. b (2000) (noting that "[f]orfeiture of fees . . . is not justified in each instance in which a lawyer violates a legal duty, nor is total forfeiture always appropriate. Some violations are inadvertent or do not significantly harm the client . . . Denying the lawyer all compensation would sometimes be an excessive sanction, giving a windfall to a client.").

of Connecticut. See, Somuh v. Flachs, 352 Md. 241, 721 A.2d 680 (1998) (distinguishing Perlah on the grounds that the Perlah attorney maintained an office in a state in which he was not licensed). Moreover, unlike the case at bar, the Perlah attorney never secured local counsel to represent the client on issues of Connecticut law, nor did he perform the lion's share of his services in New York, where he was licensed. Thus, even if Douglas had practiced law in Connecticut, which he did not, his conduct would be nothing like that of the attorney in Perlah.

Taft v. Amsel, 23 Conn. Supp. 225, 180 A.2d 756 (Conn. Super. 1962) and In re Peterson, 163 B.R. 665 (B.R. Conn. 1994) are similarly distinguishable. The attorney in Taft, prior to obtaining a Connecticut law license, actually formed a corporation in Connecticut and, as in Perlah, neither informed the "clients" of his unlicensed status nor associated with local counsel. The attorney in Peterson, though only licensed in New York, had his only law office in Connecticut, solicited business in Connecticut from Connecticut clients, prepared pleadings in Connecticut, and issued stationery that listed his Connecticut office. Apparently, he did not even practice in New York. The Peterson Court specifically noted that the attorney "did not consult with Connecticut-licensed counsel in rendering advice on matters of Connecticut law," Peterson at 673, and that he held himself out in Connecticut to provide legal advice to "all comers." Id. at 675.

Thus, the Perlah, Taft and Peterson courts made their decisions without the benefit of briefing or argument on any of the circumstances favoring compensation in the present case. Even assuming Douglas practiced law, which he did not, he had no have an office in Connecticut, he did not solicit business in Connecticut or from Connecticut clients, he did not prepare pleadings in Connecticut or anywhere else, he did not form a

Corporation in Connecticut, he did not appear as counsel in any Connecticut Court. Moreover, unlike any attorney in Perlah, Taft or Peterson, Douglas insisted that Norman C. always had Connecticut counsel, and made his unlicensed status known from the very beginning.

Because Douglas was, at all times, associated with Connecticut counsel, and because Norman C. enlisted Douglas' assistance with full knowledge that Douglas was licensed only in New York, none of the dangers of Connecticut's unauthorized practice statute are implicated. Accordingly, his services are compensable even if construed to be the practice of law.

## II. Douglas Is Entitled To Compensation for Service Performed In New York Where He Is Licensed To Practice Law

Even if plaintiff/third party defendants were correct in asserting that by writing letters, reviewing and organizing documents and making phone calls, Douglas engaged in the practice of law, his services would nonetheless be compensable since he performed much of those tasks in New York, where he is fully licensed.

Plaintiff/third-party defendants do not cite a single case supporting the proposition that a New York attorney may not be compensated for legal services performed in his New York office, though they relate to a Connecticut matter. The law is, rather, the opposite. Recognizing that "[m]ultistate relationships are a common part of today's society," courts have sensed the need to deal with those relationships "in a commonsense fashion." Estate of Waring, 221 A.2d 193, 197 (N.J. 1966); ABA Committee on Ethics and Professional Responsibility, Formal Op. 316 (1967).

Thus, attorneys are permitted to conduct activities in their home state, even on issues implicating laws or proceedings in other states:

> Some activities are clearly permissible. Thus, a lawyer conducting activities n the lawyer's home state may advise a client about the law of another state, a proceeding in another state, or a transaction there, including conducting research in the law of the other state, advising the client about the application of that law, and drafting legal documents intended to have legal effect there. There is no *per se* bar against such a lawyer giving a formal opinion based in whole or in part on the law of another jurisdiction . . . It is also clearly permissible for a lawyer from a home-state office to direct communications to persons and organizations in other states (in which the lawyer is not separately admitted), by letter, telephone, telecopier, or other forms of electronic communication.

Restatement (3rd) The Law Governing Lawyers § 3 cmt. (2001)[3]; see also, Kellett v.

Dolin, 1999 WL 814364 (D. N.H. May 28, 1999) (plaintiffs did not show that attorney

who had advised client in New York, knowing client would act on that advice in New

Hampshire, had engaged in the unauthorized practice of law in New Hampshire); El

Gemayel v. Seaman, 533 N.E.2d 245 (N.Y. 1988) (attorney and expert in Lebanese law

could call and write client from DC office and, while traveling in Massachusetts, give

New York client advice about enforceability of Massachusetts custody decree in

Lebanon); Lindsey v. Ogden, 10 Mass. App. Ct. 142, 406 N.E.2d 701 (1980) ("A

Massachusetts domiciliary is free to consult a licensed New York attorney on the merits

of her estate plan."); Lamb v. Jones, 202 So.2d 810, 815 (Fla. Dist. Ct. App. 1967)

(South Carolina attorney could recover fees for services performed in Florida and

Alabama where, over four year period, he advised her regarding stocks and trusts,

prepared will and trust agreement, but did not appear in court).

---

[3] The Restatement provides two helpful examples. See, Restatement (3rd) The Law Governing Lawyers § 3 Ill. 1 (2001) (indicating that it is permissible for attorney whose office is in State A but near border with State B to represent State B residents from office in State A even where work requires research on issues implicating laws of State B); Id. Ill. 5 (permissible for attorney licensed in State A, introduced to client in State B, agrees to draft estate arrangement for client, returns to State A, conducts legal research in State A, consults by telephone with client in state B, returns to State B with documents to execution by client and witnesses).

The Hawaii Supreme Court recently confronted this issue in Fought & Co.

v. Steel Eng'g and Erec tion, Inc., 951 P.2d 487 (Haw. 1998).  There, a

company doing business in Hawaii consulted with its Oregon counsel while using

Hawaii counsel as its in-state representative.  Although the proceedings were in

Hawaii, the company's  Oregon counsel consulted with the Hawaii counsel

regarding an appeal in Hawaii, prepared a position paper for mediation, assisted

Hawaii counsel with legal research, reviewed and analyzed documents related to

the Hawaii litigation, and analyzed papers submitted by other parties in the

litigation, all from its Oregon office.

The Court held that the Oregon attorney's fees were recoverable.   In doing so,

it emphasized that the realities of modern society require a flexible approach to the

unauthorized practice prohibition:

> While the scope of theses statutes must be expansive enough to afford the
> public needed protection from incompetent legal advice and counsel, the
> transformation of our economy from a local to a global one has generated
> compelling policy reasons for refraining from adopting an application so
> broad that a law firm, which is located outside the state . . . may
> automatically be deemed to have practiced law ' within the jurisdiction'
> merely by advising a client regarding the effect of Hawaii law or by
> 'virtually entering' the jurisd iction on behalf of a client via 'telephone,
> fax, computer, or other modern technological means.

Id. at 47, 951 P.2d 487 (citations omitted).

In the present case, even if plaintiff can show that Douglas was practicing law,

defendant should nonetheless recover since at least for the services performed in New

York, which was the vast majority of his work.  Most telephone conversations between

Cohen and Wolf and Douglas were to or from his New York office. When Douglas

commented on drafts and letters, he did so from his office in New York. Many more services were performed in New York, including dealing with a handwriting expert; meeting with the Trust Department of Sterling National Bank; speaking with a New York Immigration Attorney; contacting forensic detectives; organizing real estate appraisers; and finding substance abuse treatment for Norman's brother Steven.

Accordingly, these services were compensable.

**III.    Douglas is Entitled to Compensation For All Services Not Constituting the Practice of Law**

Finally, Summary Judgment is inappropriate because even if the Court were to accept plaintiff/third party defendants' argument that some of Douglas' activities constituted "the practice of law," Douglas would still be entitled to compensation for services that were not the practice of law. Accordingly, a trial would still be necessary to determine which activities were compensable. This is the law of the case:

> If some of Defendant's actions are deem ed to constitute the unauthorized practice of law, the factual issue of how much of Defendant's billed time is not compensable to and how many compensable hours were billed for services that did not constitute the practice of law remains unresolved.

See Ruling on Plaintiff' s Motion for Summary Judgment [Docket No. 67 p. 16].

Perlah, 29 Conn. App. At 48, 612 A.2d at 809 (remanding the case for a determination of compensation to be awarded for services that were compensable). There is no case which holds that a single act of unauthorized practice of law disentitles a service

provider to all fees earned during a seven year relationship with a client.

THE DEFENDANT/THIRD PARTY PLAINTIFF
MICHAEL A. DOUGLAS

BY _____
Joshua D. Lanning (ct 24529)
JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
350 Orange Street, P.O. Box 606
New Haven, CT 06503
Phone: (203) 772-3100
Fax: (203) 772-1691
E-Mail: jlanning@jacobslaw.com

## CERTIFICATION

I hereby certify that a copy of the Defendant's Defendant's Memorandum In

Support Of Proposed Jury Instructions was hand delivered on March 8, 2005, to:

Frederick Lovejoy, Esq.
P.O. Box 56
Easton, CT  06612

Joshua D. Lanning